Thomas B. WEBSTER, Eric Schrank, Van A. Bulf, Peter Churgel, Dean Hoke, Sam C. Bittetti, individually and on behalf of all persons similarly situated, Appellants,

v.

BECHTEL, INC., Appellee.

STATE of Alaska, Cross-Appellant,

v.

BECHTEL, INC., Cross-Appellee.

Nos. 3979, 4139.

Supreme Court of Alaska.

Dec. 12, 1980.

---

Cal., Edward T. Noonan, Charles E. Cole, Fairbanks, for appellants.

Thomas H. Robertson, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for cross-appellant.

John M. Conway, John A. Treptow, Atkinson, Conway, Young, Bell & Gagnon, Anchorage, Jesse B. Grove, III, Jon T. Anderson, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for appellee/cross-appellee.

Mary Ann Bernard, Lois G. Williams, Attys., Donald S. Shire, Associate Sol., Carin Ann Clauss, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., for amicus curiae Secretary of Labor.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

This matter concerns an action by Bechtel employees to recover unpaid overtime compensation and damages provided by the Alaska Wage and Hour Act (hereinafter "Alaska Act"), AS 23.10.050–.150. The primary issue presented is whether the Alaska Act is preempted by the federal Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C.A. §§ 201–19. We conclude that the Alaska Act is not preempted.

On July 18, 1977, Thomas B. Webster and five other named plaintiffs filed a complaint in an Alaska superior court alleging that their employer, Bechtel, Inc., failed to pay overtime compensation in violation of the Alaska Act (hereinafter "Webster action"). The plaintiffs also filed a motion for certification as a class action, seeking recovery for all other similarly situated Bechtel employees.

The plaintiffs were quality control inspectors and engineers employed by Bechtel in connection with the construction of the Trans-Alaska Oil Pipeline Project.[1] The

Victor B. Levit, David R. Harrison, Ralph M. Tener, Long & Levit, San Francisco,

1. Specifically, the complaint stated that the class consisted of the following:

quality control inspectors, quality control engineers, assistant field engineers, senior qual-

complaint alleged that the plaintiffs, working an average of eighty-four hours per week, and on occasion as much as twenty-four hours per day, were not compensated for their overtime hours. Additionally, it was asserted that some plaintiffs were instructed by Bechtel to report only ten hours of work per day when in fact they actually worked an average of twelve hours per day. It was further alleged that Bechtel had violated provisions of the Alaska Act requiring that employees receive compensation of the rate of one and one-half times the regular rate for all hours worked in excess of forty hours per week or eight hours per day.[2] Liquidated damages equal to the amount of unpaid overtime wages were sought by plaintiffs.[3]

In August, 1977, the United States Secretary of Labor filed a complaint on behalf of these same employees against Bechtel in federal district court in California (hereinafter "Marshall action"). The federal complaint alleged that Bechtel had violated the overtime provisions of the FLSA and sought back wages and the restraint of future violations.

In the same month, the Alaska superior court certified the Webster action as a class action. Bechtel, however, petitioned the federal district court in Alaska to remove the Webster action to federal court asserting that the Alaska Act was preempted by the federal FLSA. The federal district court declined to reach the issue of preemption, holding that the complaint did not present a federal question. It ruled that if preemption existed, it served only as a defense to the state action. Therefore, the

federal district court ordered the case remanded to the state superior court.

Following the remand, Bechtel moved to dismiss the Webster action arguing that the Alaska Act was preempted by the FLSA. The State of Alaska sought to intervene because of the state's interest in the constitutionality of the Alaska Act and in enforcement of claims under the Act. The state's intervention motion was granted.

Treating Bechtel's motion to dismiss as a motion for partial summary judgment under Alaska Civil Rules 12(b)(1), 54(b), and 56, the superior court granted the motion. In reaching this ruling, the superior court found that the Webster "action include[d] claims for wages which are covered and preempted by the provisions of the federal Fair Labor Standards Act...." The court entered a judgment in favor of Bechtel "with respect to claims which are within the scope of benefits provided for them by the federal [FLSA]." The superior court noted that such benefits were being sought in the Marshall action.

Plaintiffs appealed, contending that the Alaska Act is not preempted by the FLSA. After the filing of the notice of appeal to this court, Bechtel and the United States Secretary of Labor entered a consent judgment in the Marshall action settling for an amount not to exceed $3,000,000. The settlement applies to all members of the Webster action except for the thirty-five members who filed formal written consents in the Webster action prior to the commencement of the Marshall action.

ity control engineers, resident quality control engineers, assistant resident quality control engineers, lead quality control engineers, assistant quality control supervisors and quality control field inspectors.

2. AS 23.10.060 provides in relevant part:
*Payment for overtime.* No employer who employs employees engaged in commerce, or other business, or in the production of goods or materials in Alaska may employ an employee not acting in a supervisory capacity, either male or female, for a workweek longer than 40 hours or for more than eight hours a day, except that if the employer finds it necessary to employ an employee in excess of 40

hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid, and this provision is considered included in all contracts of employment.

3. AS 23.10.110(a) provides:
*Remedies of employee.* (a) An employer who violates a provision of §§ 60 or 65 of the chapter is liable to an employee affected in the amount of his unpaid minimum wages, or unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

## I

### THE BACKGROUND OF THE FLSA AND THE ALASKA ACT

Before undertaking an analysis of the preemption issue, it is necessary to set forth some background information regarding the FLSA and the Alaska Act. The FLSA, 29 U.S.C.A. §§ 201–219, sets forth the national minimum wage, the maximum workweek and rules concerning child labor. The congressional findings and declaration of policy in the act are as follows:

(a) The Congress finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce. That Congress further finds that the employment of persons in domestic service in households affects commerce.

(b) It is declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C.A. § 202 (West 1978). A recent law review gave the following factual background on the FLSA:

The Fair Labor Standards Act of 1938 (FLSA) was the original anti-poverty law, enacted by Congress as the country was struggling out of throes of the Great Depression. To stimulate the devastated economy, wage and hour controls were placed upon employment of the nation's work force, resulting in a minimum wage floor and a maximum hours limitation on the workweek. The premise that the FLSA's main thrust was directed at alleviating the Depression's destitution of the nation's workers was reiterated as recently as 1966. During deliberations on the proposed 1966 amendments to the FLSA, the Senate Committee on Labor and Public Welfare commented:

The Fair Labor Standards Act was enacted in 1938 to meet the economic and social problems of that era. Low wages, long working hours and high unemployment plagued the Nation, which was then in the midst of an unprecedented depression. The policy of the act, as set forth therein, was to correct and as rapidly as practicable to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.[4]

The most important amendment to the FLSA and the one central to this appeal is the Portal-to-Portal Act, 29 U.S.C.A. §§ 251–262. The United States Supreme Court's decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, *reh. denied*, 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946) held that employers were liable for pay to employees not only for customary work hours but also for time spent on the employer's premises getting to and from work. Large numbers of suits were instituted, with potential liability in the billions. Finding this enormous potential liability to be a threat to the national economy, Congress in 1947 passed the Portal-to-Portal Act extinguishing any

---

4. R. Willis, *The Evolution of The Fair Labor Standards Act*, 26 U. Miami L.Rev. 607, 607–08 (1972) (footnotes omitted).

right to such pay.[5] This act also changed certain procedures as to claims under the FLSA, creating a national statute of limitations, establishing a "good faith" defense of reliance on prior regulations, and making the liquidated damages discretionary in the absence of bad faith.[6]

The Alaska Act, AS 23.10.050–.150, enacted in 1959 (ch. 171 SLA 1959), has similar purposes to the federal act and is based upon it. *McGinnis v. Stevens*, 543 P.2d 1221, 1238–39 (Alaska 1975), *appeal after remand*, 570 P.2d 735 (Alaska 1977). AS 23.10.050 provides:

It is the public policy of the state to

(1) establish minimum wage and overtime compensation standards for workers at levels consistent with their health, efficiency and general well-being, and

(2) safeguard existing minimum wage and overtime compensation standards

which are adequate to maintain the health, efficiency and general well-being of workers against the unfair competition of wage and hour standards which do not provide adequate standards of living.

The distinctive provisions of the Alaska Act which are important to the present case are: (1) the Alaska Act provides for fifty cents higher minimum wage than the federal minimum;[7] (2) the Alaska Act provides for payment of one and one-half times the regular rate of pay for any hours worked in excess of forty hours per week or eight hours per day[8] while the FLSA requires such payment only for hours worked in excess of forty hours per week;[9] (3) the Alaska Act contains no "good faith" exception to the mandatory award of liquidated damages,[10] whereas the FLSA provides that such an award is discretionary if the employer acted in good faith;[11] (4) under Alas-

---

5. See H.R. Rep. No. 71, 80th Cong., 1st Sess., *reprinted in* [1947] U.S.Code Cong. Service, p. 1029.

6. *Id.*, [1947] U.S.Code Cong. Service at 1035–36.

7. AS 23.10.065 provides in relevant part:
*Minimum Wages.* An employer shall pay to each of his employees wages at a rate of not less than 50 cents an hour greater than the prevailing Federal Minimum Wage Law or $2.60 an hour, whichever is greater, for hours worked in a pay period, whether the work is measured by time, piece, commission or otherwise.

8. For the text of AS 23.10.060, see note 2, *supra*.

9. 29 U.S.C.A. § 207(a)(1) (West Supp.1980) provides:
*Maximum Hours*
(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

10. For the text of AS 23.10.110(a), see note 3, *supra*.

11. 29 U.S.C.A. § 259 (West 1975) provides in part:
*Reliance in Future on Administrative Rulings, etc.*
(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.
29 U.S.C.A. § 260 (West 1975) provides:
*Liquidated Damages*
In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the

ka procedure the Alaska Act would be enforced by opt-out class actions [12] while the FLSA allows only opt-in class actions.[13] Additionally, the Alaska Act applies to both employees covered by the FLSA and those who are, because of insufficient connections to interstate commerce, exempt from the FLSA.[14]

The above discussion demonstrates that the FLSA and the Alaska Act were both enacted for the same purposes: *i. e.*, to establish minimum wage, maximum workweek, and overtime compensation standards which are adequate to maintain the health, efficiency and general well-being of workers. Even though it can be said that the Alaska Act supplements the FLSA because they have similar purposes, the Alaska Act may nevertheless be preempted by the FLSA to the extent that it frustrates the

purpose of the FLSA.[15] Consequently, we turn to the question of whether the Alaska Act is preempted by the FLSA.

## II

## THE FRAMEWORK FOR FEDERAL PREEMPTION

In *Bald v. RCA Alascom*, 569 P.2d 1328, 1331 (Alaska 1977), we discussed the general contours of the preemption doctrine.

The preemption principle is derived from the supremacy clause of article VI of the federal Constitution, which declares that federal law shall be 'the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'

court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act *or omission was not a violation of the Fair Labor Standards Act of 1938, as amended,* the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

12. *See* Alaska R.Civ.P. 23.

13. 29 U.S.C.A. § 216(b) (West Supp.1980) provides:
  *Penalties: Civil and Criminal Liability; Injunction Proceedings Terminating Right of Action; Waiver of Claims; Actions by Secretary of Labor; Limitation of Actions; Savings Provision.* (b) Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No em-

ployee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed *in the court in which such action is* brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action. The right provided by this subsection to bring any action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefore under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title.

14. *See Alaska Int'l Industries, Inc. v. Musarra,* 602 P.2d 1240, 1246 n.20 (Alaska 1979).

15. *See Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc.,* 372 U.S. 714, 722, 83 S.Ct. 1022, 1026, 10 L.Ed.2d 84, 90 (1963) ("a state statute identical in purpose with a federal statute is invalid ... [if] the purpose of the federal statute would to some extent be frustrated by the state statute."); *Bald v. RCA Alascom,* 569 P.2d 1328, 1332 (Alaska 1977).

The principle is far from easy to apply. No two cases are factually alike. Preemption tests or standards are necessarily phrased in general or abstract terms which are of limited usefulness in applying the principle to a concrete set of facts. In each case, a balance must be struck between the competing demands of federal uniformity and local autonomy. We must look to the policy, intent, and context of the federal statute to determine whether application of the state law would frustrate the operation of the federal one.[16]

■ The United States Supreme Court provided a summary of the applicable test in *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188–89 (1978) (citations omitted):

The Court's prior cases indicate that when a State's exercise of its police power is challenged under the Supremacy Clause, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' Under the relevant cases, one of the legitimate inquiries is whether Congress has either explicitly or implicitly declared that the States are prohibited from regulating the various aspects of oil-tanker operations and design with which the Tanker Law is concerned. As the Court noted in [*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 [67 S.Ct. 1146, 1152], 91 L.Ed. 1447, 1459 (1947)]:

[The congressional] purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Or the Act of Congress may touch a field in which the federal interest is so dominant that

the federal system will be assumed to preclude enforcement of state laws on the same subject. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose.

Even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. A conflict will be found 'where compliance with both federal and state regulations is physical impossibility . . . ,' or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

Thus, the appropriate analysis is bipartite: first, looking to the "policy, intent, and context" of the federal statute, whether the state regulation is expressly or implicitly declared preempted; second, even if no declaration is found, whether the statutes conflict to the extent that (1) it is impossible to comply simultaneously with the dual regulation or (2) the state regulation obstructs the execution of the purpose of the federal regulation.

### III

### EXPRESS OR IMPLICIT DECLARATION OF PREEMPTION

■ The initial step in determining whether a state statute is preempted is to determine whether Congress has explicitly or implicitly declared that states are prohibited from regulating the field. Regardless whether the state action is consistent with the relevant federal statutes it is invalid if "the federal legislative scheme announces, or is best understood as implying, a congressional purpose to 'occupy the field.' "[17]

---

**16.** *See generally*, K. Hirsch, *Toward a New View of Federal Preemption*, 1972 U.Ill.L.Forum 515 (1972); Note, *A Framework for Preemption Analysis*, 88 Yale L.J. 363 (1978) (hereinafter cited as *Framework*); Note, *The Preemption Doctrine: Shifting Perspectives on Federalism and the Burger Court*, 75 Colum.L.

Rev. 623 (1975); Note, *Preemption as Preferential Ground: A New Canon of Construction*, 12 Stan.L.Rev. 208 (1959). *See also*, L. Tribe, *American Constitutional Law* §§ 6–23 to 6–27 (1978) (hereinafter cited as *Tribe*).

**17.** Tribe, note 16 *supra*, § 6–23, at 377.

Congressional intent to occupy the field will not be lightly inferred.[18]

> The principle to be derived from [the Supreme Court's] decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.

*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257, *reh. denied*, 374 U.S. 858, 83 S.Ct. 1861, 10 L.Ed.2d 1082 (1963).[19] Moreover,

> Congress legislated here in a field which the states have traditionally occupied. So we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947) (citations omitted).[20] The employment relationship, including "minimum and other wage laws," is a local concern traditionally within the state's police power. *De Canas v. Bica*, 424 U.S. 351, 356–57, 96 S.Ct. 933, 936–937, 47 L.Ed.2d 43, 49 (1976).[21] Thus, the Alaska Act is not superseded absent a "clear and manifest purpose of Congress."

■ We discern no "clear and manifest purpose of Congress" to occupy this field. In fact, Congress explicitly provided in the FLSA that state regulation was not preempted. 29 U.S.C.A. § 218(a) (West 1975) provides:

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter.

Moreover, there is no other language in the text of the FLSA or statement in its legislative history which indicates that Congress intended the FLSA to be an exclusive regulatory measure. Additionally, federal administrative regulations recognize that state laws may exist.[22]

---

**18.** *Id.*, § 6–25, at 384.

**19.** *See also Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947); *Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Bd.*, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154, 1164 (1942).

**20.** *See Framework*, note 16 *supra*, at 389.

**21.** *See Simpson v. Alaska State Comm'n for Human Rights*, 423 F.Supp. 552, 556 (D. Alaska 1976), *aff'd* 608 F.2d 1171 (9th Cir. 1979).

**22.** 29 C.F.R. § 778.5 provides:
*Relation to other laws generally.*
Various Federal, State, and local laws require the payment of minimum hourly, daily or weekly wages different from the minimum set forth in the Fair Labor Standards Act,

and the payment of overtime compensation computed on bases different from those set forth in the Fair Labor Standards Act. Where such legislation is applicable and does not contravene the requirements of the Fair Labor Standards Act, nothing in the act, the regulations or the interpretations announced by the Administrator should be taken to override or nullify the provisions of these laws. Compliance with other applicable legislation does not excuse noncompliance with the Fair Labor Standards Act. Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words "regular rate at which he is employed" as used in section 7 must be con-

Since this is an area of traditional local concern and Congress expressly indicated that it wished to allow state regulations concerning wages and hours, we conclude that Congress did not intend to "occupy the field" in enacting the FLSA.[23]

Alternatively, Bechtel argues that even if Congress had no intent to preempt all state wage and hour regulations, it intended to supersede all such regulations except those providing for a higher minimum wage or lower maximum workweek. Bechtel's contention is premised on its narrow reading of 29 U.S.C.A. § 218(a).

29 U.S.C.A. § 218(a), a saving clause,[24] makes clear that state statutes establishing a higher minimum wage or lower maximum workweek are not preempted. Bechtel contends that § 218(a) should be given a narrow construction and, thus, only state statutes with a higher minimum wage or lower maximum workweek are saved and, further, such statutes are saved only to the extent of the more beneficial increment. Bechtel notes that although the Alaska Act provides for a higher minimum wage, AS 23.10.065, this provision is not at issue since the *Webster* action involves recovery for wages greater than the Alaska statutory minimum wage. Bechtel also asserts that the Alaska Act does not provide for a lower maximum workweek. Based on that assertion and its contention that § 218(a) should be narrowly construed, Bechtel concludes that the Alaska Act is not saved.

■ The flaw in Bechtel's logic is that the Alaska Act does provide for a lower maximum workweek. It provides for overtime compensation for hours worked in excess of "forty hours [a week] or . . . eight

hours a day." AS 23.10.060. The applicable provision of the FLSA provides for overtime compensation for hours worked in excess of forty hours. 29 U.S.C.A. § 207 (West Supp.1980). Bechtel argues that the eight hour provision of AS 23.10.060 is not a lower maximum workweek within the meaning of § 218(a). Bechtel asserts:

Realistically, though, there is no reason to believe that 'workweek' as used in section 218 means other than what it says, i. e., 'week,' which is a thing different from a 'day.'

We decline to adopt such a literal interpretation of § 218(a).

■ An argument similar to the one advanced by Bechtel was rejected in *Glick v. State*, 162 Mont. 82, 509 P.2d 1 (Mont.) *cert. denied*, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106 (1973), *appeal after remand*, 165 Mont. 307, 528 P.2d 686 (1974), where the employer contended that the trial court erred in computing the regular hourly rate of pay by relying on Montana constitutional and statutory provisions providing for a maximum eight hour work day rather than standards provided by the FLSA. The employees argued that "the Federal Fair Labor Standards Act provides a minimum base and that states can give greater benefits to the workers of their state." *Id.* 509 P.2d at 4. In holding that the trial court did not err in using the eight hour day as a base, the court relied on the following language from a New Jersey appellate court.

The federal act, 29 U.S.C.A. § 218(a), mandates compliance with a state maximum workweek requirement lower than that set by the federal act. Though 'workweek' is not defined in the federal act, it is clearly the intent of the Con-

strued to mean the regular rate at which he is lawfully employed.

**23.** *Accord, Plouffe v. Farm & Ranch Equip. Co.*, 174 Mont. 313, 570 P.2d 1106, 1108–09 (1977) (holding Congress did not "preempt the entire field of wage and hour regulation by enactment of the Fair Labor Standards Act."); *see also Williams v. W. M. A. Transit Co.*, 472 F.2d 1258, 1261 (D.C. Cir. 1972).

**24.** In regard to express saving, one commentator notes:

Express saving is present when a national statute expressly forbids a preemptive interpretation of national law and this command is applicable to the state law in question. Saving clauses typically command that 'nothing [herein] shall be construed as preempting' certain state laws or that 'nothing [herein] shall be construed as authorizing' conduct forbidden by state law.

*Framework*, note 16 *supra*, at 365–66.

gress that a lower state maximum hour regulation, creating an overtime arrangement more favorable to the employee than that contained in § 207 of the federal act, should prevail. Such an interpretation is dictated by the plain meaning of the statutory language. 'Maximum workweek' does not in fact limit the number of hours an employee may work. It must refer to that number of excess hours worked for which an overtime rate must be paid. This conclusion is further evidenced by the utilization of the term 'workweek' in 29 U.S.C.A. § 207, where it is used in reference to the number of hours worked in excess of which the overtime rate must be paid. *See, e. g.*, 29 U.S.C.A. § 207(a)(2)(A). The term 'maximum workweek' in 29 U.S.C.A. § 218(a) is thus synonymous with maximum hour/overtime. Accordingly, the requirement of 29 U.S.C.A. § 218(a) that a lower state maximum workweek be enforced mandates the enforcement of a state maximum hours/overtime provision more favorable to the employee than that set by the federal act.

*Id.* at 4–5, *quoting State v. Comfort Cab, Inc.*, 118 N.J.Super. 162, 286 A.2d 742, 748 (1972) (citations omitted). We also are persuaded that "maximum workweek" refers to the number of excess hours worked for which an overtime rate must be paid. Since, under the Alaska Act, the number of hours required for the overtime rate is less than that under the FLSA, the Alaska Act provides for a lower maximum workweek within the meaning of § 218(a). Consequently, the Alaska Act comes within the express saving clause.

Consistent with its position that the express saving clause, § 218(a), should be literally and restrictively construed, Bechtel argues that other provisions of the Alaska Act, more favorable to employees, should be deemed preempted by the FLSA. It draws a negative inference from § 218(a), *i. e.*, since § 218(a) on its face only saves those

provisions of state statutes granting higher minimum wages and lower maximum workweeks, it does not save other provisions more beneficial to employees. Appellants Webster et al., Cross-Appellant State of Alaska, and the United States Secretary of Labor, as amicus curiae, assert that § 218(a) should be expansively construed, thereby preventing preemption of provisions in state statutes which are more beneficial to employees. Both sides rely on the relevant federal legislative history, case law, and administrative regulations to support their respective positions.

▮ Because of the conclusion we reach, a discussion concerning the scope of § 218(a) is obviated. Having found that the Congress did not intend to occupy this field, we must conclude that the Alaska Act can only be "void to the extent that it actually conflicts with a valid federal statute." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188 (1978). Were we to find such conflicts here, the scope of § 218(a) would become crucial, as a saving clause may prevent preemption of state statutes which conflict with the purpose of a federal state.[25] Since we conclude below that the provisions in question do not conflict with the FLSA, we need not determine whether they are saved by § 218(a), the saving clause.

## IV

### CONFLICT

▮ Having concluded that in enacting the FLSA, Congress did not intend to occupy the field, we must now determine whether there are any conflicts between the FLSA and the Alaska Act. A conflict can be found in either one of two ways:

[A] Where compliance with both federal and state regulations is a physical impossibility; or

---

25. *See Framework*, note 16 *supra*, at 366. "If a national statute expressly saves certain state laws, courts have followed this command even if it appears inconsistent with the overall pur-

pose of the statute and even if the state law forbids the exercise of opportunities expressly granted by the national law."

[B] Where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Ray,* 435 U.S. at 158, 98 S.Ct. at 994, 55 L.Ed.2d at 188–89 (citations omitted).[26] Each will be considered in turn.

A. *Compliance is a Physical Impossibility*

There is no possible argument that Bechtel or anyone else is unable to comply with both the Alaska Act and the FLSA. Such claims arise when complying with the provisions of one act violates the other act. The Alaska Act merely requires higher minimum and overtime pay than the FLSA. Although compliance with both is more expensive than compliance with the FLSA, it is not, in any sense, impossible.

B. *Obstacle to Federal Purposes and Objectives*

Bechtel notes four possible conflicts between the Alaska Act and the FLSA.

1. Concurrent enforcement results in double recovery.

2. An opt-out class action for recovery is allowed under the Alaska Act, while it is precluded under 29 U.S.C.A. § 216(b).

3. The Alaska state class action continues despite the express preclusion in 29 U.S.C.A. § 216(b) of private suits once the secretary prosecutes a FLSA enforcement action;

4. Mandatory liquidated damages are available under AS 23.10.110 while they are subject to a good faith defense under 29 U.S.C.A. §§ 216(b), 260.[27]

These asserted conflicts will be discussed seriatim.

First, Bechtel contends that the statutes conflict because concurrent enforcement will result in double recovery. In determining whether this conflict exists, the rule of construction to be applied to the Alaska Act is that the act should be construed, if possible, to avoid unconstitutionality.[28] Thus, the Alaska Act should be construed to avoid conflicts with the FLSA.

If double recovery were allowed, the acts would conflict. The judgment in the Marshall action was for back pay covering the same period sought in the Webster action. Although the recovery in the Marshall suit was for a violation of the federal statute, the recovery would include part of the possible recovery under the Alaska Act. Although the Alaska Act is silent as to whether a set-off should be given, we believe the Alaska Act should be construed to preclude double recovery. Such a construction does not result in a bar of any action under the Alaska Act which is also covered by the FLSA; it does mean, however, that if suits are filed under both Acts, the Alaska award must be offset by any recovery under the federal act. Given our construction, Bechtel's argument (that the equal protection clause would be violated if employers subject to both the FLSA and the Alaska Act were required to pay more for the same overtime compensation claim than those subject only to the Alaska Act) is refuted. *Cf. Peterson v. Hagan,* 56 Wash.2d 48, 351 P.2d 127, 133 (1960) (en banc).

As a subsidiary argument, Bechtel takes the position that any part of an overtime compensation claim included within both statutes can arise only under the FLSA. In essence, this means that if a minimum wage claim was brought under the Alaska Act, the only part that would be saved is the fifty cents per hour which is more than the federal minimum. Bechtel asserts that concurrent coverage is preempted. We do not think that allowing the state claim to proceed for the entire claim presents an obsta-

---

**26.** *See also Liberati v. Bristol Bay Borough,* 584 P.2d 1115, 1122 n.26 (Alaska 1978).

**27.** Bechtel notes that all possible conflicts may not be completely identified at this time. In determining whether summary judgment was properly granted on preemption grounds, we need only consider all conflicts apparent from a review of the statutes or raised by the parties.

**28.** *Christie v. State,* 580 P.2d 310, 319 n.29 (Alaska 1978); *Larson v. State,* 564 P.2d 365, 372 (Alaska 1977); *State v. Martin,* 532 P.2d 316, 321 (Alaska 1975); *Hoffman v. State,* 404 P.2d 644, 646 (Alaska 1965).

cle to Congress' purposes and objectives. It appears that § 218(a) was intended to allow the recovery of additional amounts under more protective state laws. It is logical that Congress contemplated that the state would allow for an action as to the whole claim, not just the increment, and, further, that Congress intended that the claims would be brought together, where possible, so that enforcement would not be costly.

The next three alleged conflicts arise as differences between the procedural details of the statutes. A difference between analogous state and federal procedural provisions does not necessarily create a conflict. The procedural differences in question are not clearly contradictory on their face.[29] Thus, the provisions of the Alaska Act which are different from the FLSA are permissible if "the purpose of the federal enactment is not likely to be significantly impeded by the state law." [30] We do not believe these provisions frustrate the purposes of Congress.

The federal provisions concerning class actions and their extinguishment are found in 29 U.S.C.A. § 216(b).[31] On its face, § 216(b) provides that the limitations on the opt-in provision and the termination of a suit by the Secretary of Labor are meant to apply only to FLSA suits. Concerning class actions, the federal statutes authorize private suits as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation.... No employee shall be a party plaintiff to *any such* action unless he gives his consent in writing to become such a party and such

consent is filed in the court in which such action is brought.

29 U.S.C.A. § 216(b) (West Supp.1980) (emphasis added). The section expressly refers only to actions filed under the FLSA. Contrary to Bechtel's assertions, this provision neither expresses nor implies a Congressional prohibition of private state class actions. It can be assumed that Congress is aware that class actions are brought under state law, yet it has chosen not to prescribe that the federal class action procedures be followed in state class actions. The only relevant limitation on class actions in § 216(b) provides:

> *The right provided by this subsection* to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under Section 217.

.    .    .    .    .

29 U.S.C.A. § 216(b) (West Supp.1980). "This subsection" refers to § 216(b). Thus, this provision also addresses only private federal causes of action. It does not prohibit all subsequent federal litigation since any private federal lawsuit already filed may continue unimpeded by the Secretary's suit. Moreover, it does not mention nor purport to extinguish any private rights under state law. The "policies" expressed in these provisions apply by their terms only to federal law, and we discern no explicit congressional intent that they should apply to state law actions.[32]

Although it is apparent that there is no explicit conflict, Bechtel maintains that the Alaska class action provisions should be preempted because their enforcement would

---

**29.** " '[A]ctual conflict' is most clearly manifest when the federal and state enactments are directly contradictory on their face." Tribe, note 16 *supra,* § 6–24, at 377–78.

**30.** *Id.* at 379.

**31.** *See* note 13 *supra.*

**32.** We think the legislative history regarding this point to be inconclusive.

frustrate the objectives of Congress. It contends that the purpose of the FLSA and its amendments provided in the Portal-to-Portal Act was not just the protection of employees but "to establish a balance between employers and employees and . . . to protect the courts and employers from duplicative litigation."[33]

Bechtel contends that enforcement of the Alaska class action provisions would frustrate Congress' purpose by upsetting this balance in employment relationships and denying employers' rights. It does not demonstrate, however, how the federal purpose would be frustrated. The difference between the two class action devices is merely procedural. Under the Alaska Act, individuals are members of a class action unless they opt-out; under the FLSA they are not members unless they opt-in. The federal act clearly allows class actions. Furthermore, a private class action is the only vehicle for obtaining class relief under the Alaska statute. Although maintenance of an Alaska class action may have some effect on the balance created by Congress, the effect is relatively slight. Congress clearly comprehended that it was not exclusively defining employers' and employees' rights, since the balance which is struck in the FLSA is necessarily upset by § 218(a) which permits states to provide for higher minimum wages and lower maximum workweeks. Thus, we conclude that this minor procedural difference does not significantly impede the purposes of the FLSA.

An analogous conclusion was reached in *Eastern Sugar Associates v. Pena*, 222 F.2d 934 (1st Cir.), *cert. denied*, 350 U.S. 900, 76 S.Ct. 178, 100 L.Ed. 791 (1955). The applicable Puerto Rican law provided for a longer statute of limitations than that provided under the FLSA. On appeal, the appellants urged that the FLSA statute of limitations preempted the state statute. The First Circuit rejected this argument because:

> The statute of limitations imposed by . . . the Portal-to-Portal Act by its terms, however, applies only to suits to enforce causes of action 'under the [FLSA] . . . .' It does not purport to apply to similar causes of action arising under state law and was not intended to do so, as the legislative history clearly shows.

*Id.* at 938 (footnotes omitted). If a different statute of limitations does not alter the balance created in the Portal-to-Portal Act, a procedurally different class action provision does not. It follows that the Alaska opt-out class action provision does not present an obstacle to federal objectives.

Bechtel next argues that allowing the maintenance of an Alaska action after the filing of a suit by the Secretary would frustrate Congress' purpose of avoiding duplicative lawsuits. Although it is certainly

**33.** *See Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027, 1029 (N.D.Cal.1972) (citations omitted):

A review of the legislative history surrounding the 1947 Act clearly evidences an intention to cut back on the rights that had been created when the FLSA was originally enacted in 1938. Prior to the 1947 amendments, the applicable state statute of limitations governed the action . . . . The rule on class actions was liberal, modeled essentially after the provisions of the Federal Rules . . . . The double damages recovery was available in all cases, without regard to the culpability of defendant's conduct . . . . Each of those changes substantially affected the ability of the employee to vindicate his rights under the Act. By those and subsequent amendments, Congress carried on the delicate process of balancing the competing policies of 1) strict enforcement of the statutory objective of insuring minimally acceptable pay levels and 2) the avoidance of the economic disruption of unanticipated liabilities. In so doing Congress created a remedy conditioned with both advantages and disadvantages to the claimant. It would be difficult indeed to find any purpose in that careful process if alternative remedies, varying with variations of state law were also to be available in any case in which the alternative seemed more advantageous to the plaintiff-employee seeking to enforce his § 207 rights.

true that Congress intended to limit duplicative federal litigation, it does not follow that maintenance of a state action would frustrate that purpose. As noted previously, the limitation expressed in § 216(b) explicitly refers to federal private actions, not state actions. Moreover, in other employment areas where Congress has allowed concurrent jurisdiction, Congress has explicitly provided that a filing of a complaint by the Secretary of Labor cuts off any state action.[34] Its failure to do so under the FLSA indicates that it did not intend that commencement of a suit by the Secretary terminate state actions. Additionally, although federal private actions following a suit by the Secretary are duplicative in very literal terms, private state actions clearly are not. They provide entirely separate and distinct causes of action which the Secretary is not empowered to enforce. Finally, if the Secretary's suit terminated private state suits, it would prevent employees from recovering the additional increment of wages which they are entitled to under the state law, thereby frustrating Congress' clear intent established in § 218(a) that no "provision of this chapter ... shall excuse noncompliance with ... any State law" providing for such additional recovery. Therefore, we hold that the maintenance of a private suit under the Alaska Act does not frustrate the purpose of Congress in enacting § 216(b), terminating private federal suits following the commencement of an action by the Secretary.

Finally, Bechtel contends that the provision of the Alaska Act granting mandatory liquidated damages, AS 23.10.110, conflicts with 29 U.S.C.A. §§ 216(b) and 260[35] which make such awards discretionary if the employer shows he acted in good faith.[36] It reasons, as above, that this frustrates the purpose of Congress in enacting the Portal-to-Portal Act by upsetting the balance created by that Act. We reject this argument. First, there is no direct conflict because on its face § 260, like § 216(b), limits only recovery under the FLSA. Second, it appears that AS 23.10.110 supplements the purposes of the FLSA, rather than frustrating them. The statute guarantees higher compensation for employees, furthering the explicit purpose of § 216(b). The federal law also provides for mandatory liquidated damages except under limited circumstances.[37] There is no explicit Congressional intent or federal interest in limiting state awards of liquidated damages. Finally, in *Alaska International Industries, Inc. v. Musarra*, 602 P.2d 1240, 1249 (Alaska 1979), although the issue was not argued, we implicitly recognized that AS 23.10.110 did not conflict with 29 U.S.C.A. §§ 216(b) and 260.

---

**34.** 29 U.S.C.A. §§ 466 (West 1975), pertaining to actions under the Labor-Management Reporting and Disclosure Act, provides:

The rights and remedies provided by this subchapter shall be in addition to any and all other rights and remedies at law or in equity: *Provided*, That upon the filing of a complaint by the Secretary the jurisdiction of the district court over such trusteeship shall be exclusive and the final judgment shall be *res judicata*.

Regarding actions under age discrimination provisions, 29 U.S.C.A. § 626(c)(1) (West Supp. 1980) provides:

(c)(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided*, That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

Also, 29 U.S.C.A. § 633(a) (West 1975) provides:

(a) Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supersede any State action.

**35.** For provisions of 29 U.S.C.A. §§ 260 and 216(b), see note 11 *supra* and note 13 *supra* respectively.

**36.** *See Alaska Int'l Industries, Inc. v. Musarra*, 602 P.2d 1240, 1249 (Alaska 1979).

**37.** *Id.*

Given the state's strong concern in this area, we do not find the purposes of the FLSA are frustrated by AS 23.10.110.

■ In summary, we conclude that: (1) Congress did not intend to preempt the entire field of wage and hour regulation by enactment of the FLSA and (2) there are no identifiable conflicts between the Alaska Act and the FLSA specified by the parties.[38] Accordingly, the grant of summary judgment is reversed and the case remanded for further proceedings in accordance with this opinion.

BOOCHEVER, J., not participating.

38. Although the record is unclear on this point, apparently appellants are claiming that the portal-to-portal claims, *i. e.*, claims for time spent in going to and from work, are cognizable under the Alaska Act. This question was not considered by the superior court and has not been briefed by the parties. Although it is possible that construing the Alaska Act to permit such claims would place it in conflict with the federal amendments previously noted, we have no occasion to pass upon that issue at this point, as no such construction has been placed upon the Alaska Act to that effect at this time. Thus, we express no opinion as to the proper interpretation of the Alaska Act on this point, nor as to whether a conflict with the federal act would be presented by an interpretation allowing portal-to-portal claims.