BECHTEL PETROLEUM, INC., formerly Bechtel Incorporated, Plaintiff,

v.

Thomas B. WEBSTER; Eric S. Schrank; Van A. Bulf; Peter S. Churgel; Delbert D. Hoke; Sam C. Bitetti; Phillip C. Aikele; Gary M. Braza; Ava K. Melkonian; Donald L. Earnhart; George C. McIntosh; Walter Voight; Arvid B. Rasmusson; Allan R. Kemp; Eugene E. Work; Peter E. House; Albert J. Cooper; George G. Pearce; Claude E. Carroll; Gary B. Deeter; Jack G. Brockman; Harell L. Broome; Robert A. Brokaw; Eric A. Mefley; Earl J. Bitzenburg; Earl M. Cox, Jr.; Robert Weaver; Samuel D. Jennings; Charles A. Yokiel; Edward Aigeltinger; Emory W. Carter; Stephen C. Garey; Richard D. Libkuman; Estate of Frank Butler; Edward G. Anderson; Allen B. Snyder; Robert Prevedello; George S. Allen, Defendants.

No. C–82–6664 WHO.

United States District Court, N.D. California.

Oct. 11, 1984.

On Motion for Summary Judgment July 18, 1985.

Jesse B. Grove, Thomas R. Goin, John R. Foote, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiff.

Edgar Paul Boyko, Fletcher W. Paddison, Miller, Boyko & Bell, San Diego, Cal., Charles E. Cole, Edward T. Noonan, Law Offices of Charles Cole, Fairbanks, Alaska, for defendants except Estate of Butler, Snyder, Prevedello and Allen.

Ronald W. Lorensen, Acting Atty. Gen., Thomas H. Robertson, Asst. Atty. Gen., State of Alaska, Dept. of Law, Juneau, Alaska, for intervenors.

## OPINION AND ORDER

ORRICK, District Judge.

This decision holding that this Court will not abstain from considering *vel non* to exercise its jurisdiction to protect the decree entered in a companion case involving the same parties and the same issues merely adds more strands to the arcane web of federal and state litigation involving charges by governmental agencies and one thousand former employees of Bechtel Petroleum Co. ("Bechtel") that Bechtel, in the course of its construction of the Trans-Alaska Oil Pipeline Project, violated both state and federal wage and hour laws, namely, the Alaska Wage and Hour Act, Alaska Stat. 23.10.060 ("AWHA"), and the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). A detailed statement of prior federal and state actions is set forth as Appendix A to this opinion, but for present purposes a brief summary of both the relevant substantive law and facts of this case will suffice.

Whenever federal and state substantive laws reflect policy concerns as similar as those at stake here, striking an appropriate balance between the federal and state interests and providing reasonable procedures for parties to vindicate their federal and state claims can be a delicate matter indeed. It is essential that important federal and state substantive claims both be heard, while at the same time protecting the parties against duplicative litigation and unnecessary and endless jurisdictional disputes.

Prior litigation in this case has filled in some of the questions of the substantive overlap between the federal and state statutes. Although both of these statutes are intended for workers' protection, their provisions are not identical. For example, both FLSA and AWHA provide that failure to pay overtime for hours worked in excess of forty hours per week is a violation requiring compensation but, under the Alaska statute, work in excess of eight hours per day may provide independent justification for overtime pay. In addition, AWHA provides for liquidated damages (including amounts for interest and attorneys' fees), but § 217, the relevant provision of FLSA,

makes no provision for liquidated damages, and liquidated damages were not at issue in the prior federal litigation here. Bechtel urged in state court that FLSA had preempted state law. Although an Alaska lower court agreed, that victory was short-lived. The Alaska Supreme Court held that FLSA did not preempt AWHA and that employers sued under both provisions could be protected from double exposure by allowing an offset against any state claim of liabilities under the federal statute. *Webster v. Bechtel, Inc.*, 621 P.2d 890 (Alaska 1980).

The first action in this case was a state class action under AWHA. About a month after the state action was filed—and on the same day the class was certified—the United States Secretary of Labor ("the Secretary") brought FLSA claims in this Court on behalf of the same employees relating to the same period of employment. While appeal to the Alaska Supreme Court on the lower court's finding that the state claim had been preempted by federal law was pending, Bechtel and the Secretary entered into a consent decree, upon which this Court entered judgment. *Marshall v. Bechtel, Inc.*, No. C–77–1777 WHO (Oct. 23, 1978). That judgment required Bechtel to pay certain employees an amount not to exceed $3,000,000 and to avoid future violations of FLSA. In the state class action plaintiffs continued to press their state claims under AWHA and on March 26, 1982, the Alaska trial court denied Bechtel's motion for partial summary judgment as well as Bechtel's claim that the *Marshall* consent decree was *res judicata* on the state claims. *Webster v. Bechtel, Inc.*, No. 4FA–77–1358 Civ. (Alaska Super.Ct. Mar. 26, 1982).

This action was brought by Bechtel in December 1982 to enjoin further litigation in the Alaska state courts on behalf of the employee class. On April 19, 1983, a stipulation signed by all parties was filed, describing the schedule for filing procedural motions and stating that the plaintiff had no objection to intervention by the State of Alaska ("the State"). The State moved to intervene on May 19. Defendant employ-ees subsequently filed this motion to dismiss. Although the motion purports to raise a variety of issues, the argument is essentially that this Court should abstain from exercising its jurisdiction under the doctrine created by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

Bechtel has filed a cross-motion for summary judgment claiming that the third exception to the Anti-Injunction Act, 28 U.S.C. § 2283, known as the relitigation exception, applies here because the *Marshall* judgment is *res judicata* as to certain claims raised in the state court by the employee class and that this Court should enjoin further state litigation. Defendants moved to strike Bechtel's cross-motion on the grounds that it is beyond the scope of the procedural motions described in the April 19 stipulation and that consideration of the abstention argument must precede consideration of the *res judicata* effect of the *Marshall* judgment. In accordance with the announced schedule, this Court shall now consider only defendants' abstention argument and plaintiff's injunction argument. In light of the findings reached here concerning these issues, the *res judicata* issue will be considered subsequently.

## I

In certain narrowly prescribed circumstances, federal district courts decline to exercise the jurisdiction granted to them either by the Constitution or by statute. This extra-ordinary procedure is known as the "abstention doctrine." *See generally* C. Wright, *State and Federal Courts*, ch. 8 (4th Ed.1983). It has been characterized as a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir.1984).

Defendant employees argue that the abstention doctrine requires this Court to dis-

miss Bechtel's claim. Courts and commentators disagree about the characterization of the various strands of this doctrine. *Compare* Wright, *supra, with Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 819–20 (9th Cir.1982). Here, however, the defendants have only argued that the doctrine referred to as *Younger-Huffman* abstention applies and it is to the explication of that doctrine that the Court now turns.

### A

In *Younger,* the district court enjoined the District Attorney of Los Angeles County from prosecuting Harris under the California Criminal Syndicalism Act. Harris claimed that the Act violated his rights of free speech and press. The District Attorney petitioned for *certiorari* claiming that the action of the district court was prohibited by the Anti-Injunction Act.

■ The Supreme Court reversed, holding that the district court should have abstained. This finding was based first on principles of equitable restraint. Absent a finding of bad faith or harassment, a criminal defendant must establish that he would suffer "great and immediate" injury if not granted injunctive relief. *Younger, supra,* 401 U.S. at 46, 91 S.Ct. at 751. Second, the Court emphasized that these principles are reinforced by notions of comity and federalism which underlie the Anti-Injunction Act.

This rationale was extended to a civil nuisance proceeding in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The state court had entered judgment for the county, finding that appellee's predecessor had violated state nuisance laws by exhibiting obscene films. The judgment provided for the sale and seizure of property used in the theater's operation. Rather than appeal this decision in state court, appellee sought injunctive relief in federal district court under 42 U.S.C. § 1983, alleging that appellant's use of the nuisance statute was a deprivation of constitutional rights under color of state law. Appellants argued the

*Younger* doctrine for the first time on appeal.

The *Huffman* Court held that abstention was required on three grounds. First, the principles of federalism discussed in *Younger* applied. Second, the Court held that a nuisance proceeding was more akin to a criminal prosecution than are most cases. The State was a party to the action which was "both in aid of and closely related to criminal statutes." *Id.* at 604, 95 S.Ct. at 1208. The Court noted that the injunction had "disrupted the State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws." *Id.* at 605, 95 S.Ct. at 1208. Third, the Court held that state appellate remedies must be exhausted unless a plaintiff can demonstrate bad faith or harassment on the part of state officials. *Id.* at 609, 95 S.Ct. at 1210.

■ The *Younger-Huffman* doctrine evolved from two distinct sources of judicial restraint. First, *Younger* was based on the traditional reluctance of courts of equity, even within a unitary system, to interfere with a criminal proceeding. A plaintiff must demonstrate that there is no adequate remedy at law and that irreparable injury that is both "great and immediate" will occur. Second, our dual judicial system is based on principles of comity and federalism that dictate caution each time a federal court is asked to enjoin a state proceeding.

### B

■ The importance of the interest asserted by the state determines whether notions of comity require abstention. *Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Champion International, supra.* This doctrine has only been extended to a civil context when important state interests are at stake. *Middlesex, supra,* 457 U.S. at 434, 102 S.Ct. at 2522 ("The State's interest in the professional conduct of attorneys

involved in the administration of criminal justice is of special importance."); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) ("[T]he suit and the accompanying writ of attachment were brought to vindicate important state policies such as safeguarding the fiscal integrity of those [welfare] programs."); *Juidice v. Vail,* 430 U.S. 327, 335, 97 S.Ct. 1211, 1217, 51 L.Ed.2d 376 (1977) ("The contempt power lies at the core of the administration of a State's judicial system * * *."); *Worldwide Church of God v. California,* 623 F.2d 613 (9th Cir. 1980) (receivership imposed as part of state accounting action brought by state in its supervisory authority over charitable trusts). The invitation to apply *Younger-Huffman* analysis to all civil cases has been repeatedly and specifically declined. *See Moore v. Sims,* 442 U.S. 415, 423, n. 8, 99 S.Ct. 2371, 2377, n. 8, 60 L.Ed.2d 994 (1979) (abstention upheld where challenge brought to statute providing state-initiated emergency child custody procedure); *Trainor, supra,* 431 U.S. at 445, n. 8, 97 S.Ct. at 1918, n. 8; *Juidice, supra,* at 336, n. 13, 97 S.Ct. at 1218, n. 13.

■ Defendants assert that the State has a strong and important interest in the employees' state action here. First, they argue that the action is similar to a criminal proceeding. *Younger* restraint is mandated in civil cases where the state proceeding is akin to a criminal prosecution in important respects. *Huffman, supra,* 420 U.S. at 604, 95 S.Ct. at 1208. The presence of the State as a party and whether "the proceeding is both in aid of and closely related to criminal statutes" are both factors to be considered. *Ibid.*

The State was not an original party in the employees' class action against Bechtel. Rather, it intervened only after Bechtel raised the affirmative defense of preemption. Defendants make much of the fact that the State cannot initiate a civil enforcement action under AWHA. Alaska Stat. § 23.10.110(b); *Webster v. Bechtel, supra,* 621 P.2d at 903.[1] However, § 23.-10.140 of AWHA provides a criminal penalty.[2] The State could have brought criminal charges against Bechtel. It did not. This is not a situation where the State has chosen to proceed in a civil action rather than bring a criminal action. *Cf. Trainor, supra.* The State has chosen instead to forego its only remedy. Furthermore, there has been no demonstration as there was in *Huffman,* that the State's efforts to protect the interests underlying AWHA or to obtain compliance with the standards embodied therein have been disrupted.

Second, defendants argue that the employees state proceeding is necessary to vindicate an important state policy. No one challenges the importance of fair labor standards. Both AWHA and FLSA, its federal counterpart, were passed to protect important workers' interests. *See Webster v. Bechtel, supra,* 621 P.2d at 896. Presumably, however, important state interests are routinely reflected in their civil statutes. The critical question is whether the State has asserted that the state court proceeding here is necessary to vindicate that policy.

The State appears as an intervenor both in the state case and in this action. In the state case, however, intervention was or-

---

1. The Fifth Circuit has found that delegation of a civil action to a private party does not imply a lesser state interest. *Gresham Park Community Organization v. Howell,* 652 F.2d 1227, 1248 (5th Cir.1981). Unlike defendants in this case who seek damages in the state action, the plaintiffs in *Gresham Park* challenged the constitutionality of a state court injunction of criminal conduct and sought federal injunctive relief. Bechtel does not seek to continue the conduct which defendants challenge. It seeks to estop defendants from litigating a portion of their damage claim.

2. Section 23.10.140 provides:

"Any employer who violates a provision of AS 23.10.050–23.10.150, or of any regulation or order of the commissioner issued under it, upon conviction is punishable by a fine of not less than $100 nor more than $2,000, or by imprisonment for not less than 10 nor more than 90 days, or by both. Each day a violation occurs constitutes a separate offense."

dered "with respect to the single issue of whether the Alaska Wage and Hour Act was preempted by federal legislation." In the current action, the record does not reflect, as the defendants would have it, that the State was granted leave to intervene under Federal Rule of Civil Procedure 24(a)(2) as a matter of right. The intervention order states "for the reasons offered in support of its motion, the State of Alaska may intervene in this action." The memorandum filed in support of that motion states that intervention is appropriate under either subsection (a) or (b) of Rule 24.

Defendants argue that the State's assertion of "a strong and continuing interest" in this litigation should be given unquestioned deference. The short memorandum of intervention is the only statement before the Court of the State's position.[3] It rather cryptically charges Bechtel with attempting to collaterally attack the decision of the Alaska Supreme Court holding that FLSA does not preempt AWHA. Thus, the State seems to view this litigation as a renewed attack on the constitutionality of AWHA.

Bechtel, however, does not challenge the constitutionality of AWHA in this action. It does not argue that overtime compensation is limited to the hours worked in excess of forty hours per week as FLSA provides. The damage claims based on additional protections provided by the AWHA, such as overtime compensation for hours worked in excess of eight hours per day, are not at issue in this action. Nor are the claims of the thirty-five defendants who were not members of the state class. In this action, Bechtel does not claim that the federal statute supplants the state statute, but rather that the prior federal judgment precludes relitigation of identical state claims.

Defendants also maintain that the state action is "public interest" litigation and is, therefore, necessary to vindicate important state policies. This theory is based on a novel interpretation of a footnote in *Juidice, supra*, 430 U.S. at 327, 97 S.Ct. at 1211. The Court noted that although contempt is used in creditor proceedings "to vindicate and preserve the private interests of competing litigants," it is not "spent on purely private concerns." *Id.* at 336, n. 12, 97 S.Ct. at 1217, n. 12. The *Juidice* plaintiffs came to federal court having flaunted the integrity of the state judicial system. Bechtel neither initiated the federal litigation that resulted in the prior judgment (the Secretary of Labor did) nor avoided litigation in Alaska courts.

For the foregoing reasons, this Court does not find that the State has asserted an interest rising to a level that mandates abstention under *Younger-Huffman* notions of equitable restraint.

II

■ Bechtel has filed a cross-motion for summary judgment, asserting that this Court should exercise its jurisdiction under 28 U.S.C. §§ 1651(a)[4] and 2283 because an injunction is "necessary to protect and effectuate" the judgment entered by this Court in *Marshall v. Bechtel, supra*, No. C–77–1777 WHO. The Anti-Injunction Act absolutely prohibits federal courts from enjoining state proceedings except in certain narrowly defined circumstances. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970). Bechtel attempts here to argue that once these circumstances are demonstrated, at least those which are necessary to protect or effectuate a federal judgment,

3. The State was not represented at oral argument. Despite promises of a supplemental memorandum, nothing more than a one page "non-opposition" to defendant's motion to dismiss has been filed by the State.

4. 28 U.S.C. § 1651(a) authorizes federal courts to issue "all writs necessary or appropriate in aid of jurisdiction." 28 U.S.C. § 2283 (the "Anti-Injunction Act") provides:

"A Court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect and effectuate its judgments."

an injunction *must* issue. This argument proves too much.

At this stage of this proceeding, Anti-Injunction Act analysis does not control. *Huffman, supra*, 420 U.S. at 600, n. 15, 95 S.Ct. at 1206, n. 15. Despite its previous holding in *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), that 42 U.S.C. § 1983 is an "expressly authorized" exception to the Act, the *Huffman* court found that the district court should have abstained.

■ The preliminary review here, which is, of course, necessary to determine whether sufficient facts have been alleged to state a cause of action within the subject matter jurisdiction of the district court, is not a decision on the merits.[5] Plaintiff alleges that an injunction is necessary to protect and effectuate the prior federal judgment.[6] This allegation is sufficient to state a claim within this Court's jurisdiction.

■ At this point the Court has determined that it should exercise its jurisdiction under 28 U.S.C. § 2283 and not abstain under the doctrine created by *Younger, supra,* and its progeny. If abstention were appropriate, it would be unnecessary to consider whether an injunction should issue or to consider whether the federal *Marshall* judgment is *res judicata* as to the pending state *Webster I* proceeding. In light of this Court's holding on the abstention issue, however, the question of the *Marshall* judgment's *res judicata* effect, if

any, for purposes of the state action must now be briefed and argued.[7]

Accordingly,

IT IS HEREBY ORDERED that the parties will file cross-motions for summary judgment on the *res judicata* issue, which will be heard on November 30, 1984, at 9:00 a.m.

## APPENDIX A

### *The State Action ("Webster I")*

In July 1977, thirty-five individuals filed suit in Alaska state court on behalf of one thousand former employees of Bechtel's Quality Control Department who had worked on the Trans-Alaska Oil Pipeline Project. *Webster v. Bechtel,* C 4FA–77–1358 (hereinafter cited as *"Webster I"*). The *Webster I* plaintiffs claim that Bechtel violated the AWHA, § 23.10.050 *et seq.*, by failing to pay them overtime for hours worked in excess of eight per day or forty per week. They seek mandatory liquidated damages equal to the unpaid overtime, interest, costs, and attorneys' fees. In addition, they claim Bechtel breached their employment contracts by instructing them to falsify time cards and report only eight hours a day, which deprived them of overtime compensation.

Bechtel removed *Webster I* to the United States District Court of Alaska, asserting that AWHA was preempted by the FLSA, 29 U.S.C. § 201 *et seq.* On October 6, 1977, the action was remanded to state court

---

**5.** Examination of the merits is not necessary to assume jurisdiction over a claim nor is jurisdiction defeated by the possibility that plaintiff has failed to state a cause of action on which it is entitled to relief. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

**6.** Defendants place great reliance on *Lamb Enterprises Inc. v. Kiroff,* 549 F.2d 1052 (6th Cir. 1977). Chief Judge Phillips upheld the district court's decision to abstain under the *Younger-Huffman* doctrine when faced with a claim that the relitigation exception applied. However, as he subsequently reemphasized in distinguishing *Lamb Enterprises,* there was an unresolved question as to whether there had been a full and final adjudication of all the questions of law

and fact in the prior federal action. *Silcox v. United Trucking Services, Inc.,* 687 F.2d 848, 850 (6th Cir.1982). Defendants do not contend, nor can they, that the judgment in *Marshall* was not a final adjudication.

**7.** While a claim based on a federal law such as FLSA gives the district court jurisdiction, this claim must be raised by the plaintiff or by the defendant in a cross-claim. A federal claim raised as an affirmative defense does not create jurisdiction that arises under federal law. 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3566 at 434; *Gulley v. First National Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

because Bechtel had raised the preemption claim as a defense.

On October 18, 1977, Bechtel raised the same preemption claim in state court and moved to dismiss the complaint. The State of Alaska was given permission to intervene on November 17, 1977, because the preemption claim raised serious questions about the constitutionality of the Alaska statute. On May 24, 1978, the state trial court granted the motion to dismiss. The state plaintiffs appealed this ruling. At the request of the court, the Secretary filed an *amicus curiae* brief. The Alaska Supreme Court reversed on December 12, 1980 and remanded the case for further proceedings. *Webster v. Bechtel, Inc.*, 621 P.2d 890 (Alaska 1980) (hereinafter cited as *"Webster II"*).

### The Federal Action ("Marshall")

The Secretary of Labor brought a federal enforcement action under FLSA, claiming that Bechtel had failed to pay many of its employees overtime compensation for hours worked in excess of forty hours per week. These employees were subsequently identified as Quality Control Department personnel who had worked on the Trans-Alaska Oil Pipeline Project. At Bechtel's request, the thirty-five named defendants in this action, who were also the plaintiffs in *Webster I,* were not included in the class represented by the Secretary. The Secretary sought injunctive relief but did not seek the liquidated damages provided by FLSA.

On October 23, 1978, while the appeal of the preemption issue to the Alaska Supreme Court was pending in *Webster I,* Bechtel and the Secretary entered into a consent decree in *Marshall.* This Court subsequently entered judgment based on that decree on October 23, 1978. Bechtel agreed to avoid future violations of FLSA

and to pay certain employees an amount not to exceed $3,000,000.

The Alaska Supreme Court considered the effect of these recoveries when it remanded *Webster I,* stating "that if suits are filed under both Acts, the Alaska award must be offset by any recovery under the federal act." *Webster II, supra,* 621 P.2d at 891. Bechtel petitioned for rehearing and requested the Court to clarify the effect of the *Marshall* judgment, in light of § 2283, on *Webster I.* The Supreme Court denied the petition and remanded the case to the trial court.

In July 1981, Bechtel added affirmative defenses to *Webster I* based on the *Marshall* consent judgment. Simultaneously, it filed a motion for partial summary judgment, asserting that all of the state class members, except the thirty-five excluded from the federal action, were barred by the *res judicata* effect of *Marshall* from claiming compensation for work performed in excess of forty hours per week. That motion was denied on March 26, 1982.

### ON MOTION FOR SUMMARY JUDGMENT

Under the Anti-Injunction Act, 28 U.S.C. § 2283, Bechtel Petroleum, Inc. ("Bechtel") brings this action to enjoin approximately one thousand quality control engineers formerly employed by Bechtel during construction of the Trans-Alaska Pipeline from pursuing a claim filed in an Alaska state court in July, 1977, *sub nom. Webster v. Bechtel Inc.,* No. 1358 (hereinafter cited as *"Webster"*), under the Alaska Wage and Hour Act, A.S. 23.10.060 *et seq.* (hereinafter cited as "AWHA"). In the state action, plaintiffs seek overtime compensation for hours worked in excess of forty hours per week. In this summary judgment motion,[1] Bechtel argues that the claim was reduced to judgment by this Court when, on October 23, 1978, it entered a consent

---

1. Defendants filed a motion to dismiss on May 31, 1983. In a July 15, 1983, memorandum in opposition to that motion, plaintiff declared that its opposition should be considered a cross-motion for summary judgment. This terminology is somewhat confusing because defendants have

filed a motion to dismiss, rather than a motion for summary judgment. For the sake of clarity, the Court will refer to defendants' motion as "defendants' motion to dismiss," and to plaintiff's motion as "plaintiff's motion for summary judgment."

decree in *Marshall v. Bechtel Inc.*, No. C–77–1777–WHO (N.D.Cal.1978) (hereinafter cited as *"Marshall"*), and that the principle of *res judicata* requires preclusion of the claims in *Webster*. For the reasons hereinafter stated, Bechtel's motion for summary judgment is DENIED.

## I.

The *Webster* action was filed in July, 1977, by six, and later an additional twenty-nine, individuals as a putative class action on behalf of approximately one thousand quality control engineers formerly employed by Bechtel. The *Webster* complaint contains two counts. In the first count, which is the subject of the present action, the plaintiffs attempt to recover an overtime pay increment that they allege Bechtel failed to pay to certain of Bechtel's employees engaged in the construction of the pipeline, in violation of the AWHA. The first count actually consists of two related claims: the first seeks compensation for hours worked in excess of forty hours per week, and the second seeks compensation for hours worked in excess of eight hours per day where less than forty hours were worked in a week. The relief requested on both claims is the overtime pay increment allegedly not paid, plus statutory liquidated damages and attorneys' fees. Count II of the complaint alleges that plaintiffs were not compensated for certain hours that were worked, but not reported.

On August 11, 1977, the *Marshall* action was filed in this Court against Bechtel by then Secretary of Labor Ray Marshall (the "Secretary"), pursuant to § 17 of the Fair Labor Standards Act, 29 U.S.C. § 217 *et seq.* (hereinafter cited as "FLSA"). The Secretary sought an injunction restraining Bechtel from withholding payment of unpaid overtime compensation allegedly due under 29 U.S.C. § 207 to roughly the same class of employees represented by the named plaintiffs in the *Webster* action, along with interest and costs.[2]

After the Secretary filed the *Marshall* action in this Court, Bechtel sought to remove the concurrent state action in Alaska to federal court. The Alaska district court denied removal, holding that the state court action did not meet the requirement of federal question jurisdiction. Bechtel then moved to dismiss the action in the Superior Court of Alaska on the ground that the action was preempted by the FLSA. The Superior Court granted this motion in an order filed May 24, 1978, and the decision was appealed to the Alaska Supreme Court.

Soon after the appeal was filed, the Secretary and Bechtel agreed that a consent decree be entered in *Marshall* pursuant to which Bechtel agreed to pay its employees $3 million in back wages and promised to comply in the future with the FLSA. The consent decree, entered on October 23, 1978, reflected the "settlement" of "all claims or causes of action comprehended by the complaint." The Department of Labor thereafter sent letters to the affected employees concerning the suit and settlement. Each qualified employee was informed that he or she could accept payment under the consent judgment so long as the employee acknowledged "full satisfaction of all Fair Labor Standards Act claims," and was further informed that "the entry of judgment herein bars other or further litigation of Fair Labor Standards Act claims arising out of your employment in the Quality Control Department on the Trans-Alaska Pipeline." Bechtel's motion for summary judgment at 8. The vast majority of individuals entitled to payment under the consent decree have cashed their settlement checks.

Following settlement of the federal action, the Alaska Supreme Court reversed

---

**2.** The *Marshall* action was commenced on behalf of all Bechtel employees who worked as quality control engineers on the pipeline project. A group of thirty-five persons (the six named plaintiffs and twenty-nine others), who had joined the plaintiffs' Alaska action prior to filing of the *Marshall* action, were not included in the settlement and consent judgment because the Secretary considered the thirty-five to be excluded under 29 U.S.C. § 216(b). Bechtel concedes that these thirty-five plaintiffs are not barred by the doctrine of *res judicata*. See Bechtel's motion for summary judgment at 7, n. 5.

the earlier decision by the Superior Court that had dismissed the state action, holding that the FLSA did not preempt the AWHA, relying principally on the savings clause for state laws with higher standards than those found in 29 U.S.C. § 218. The Court further held that the $3 million obtained by the Secretary should be treated as a setoff to any future recovery granted in the state action. *Webster v. Bechtel Inc.*, 621 P.2d 890, 900–902 (Alaska, 1980).

After the action was remanded to the Superior Court of Alaska, Bechtel renewed its argument that the prior FLSA judgment precluded the state court action. Having earlier pressed this claim in terms of pre-emption, Bechtel now phrased its argument in terms of *res judicata*. In an opinion entered on March 26, 1982, the Superior Court held that the principle of *res judicata* did not bar the state action. *Webster v. Bechtel Inc.*, No. 4FA–77–1358 Civ. (Alaska Super.Ct., Mar. 26, 1982).

This action was brought by Bechtel against the employee class in December 1982 to enjoin further litigation in the Alaska state courts on behalf of the class. The State of Alaska moved to intervene on May 19, 1983, and the motion was granted. The defendant employee class subsequently moved to dismiss, relying principally on absention doctrine as set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Bechtel then filed a motion for summary judgment claiming that the third exception to the Anti-Injunction Act, 28 U.S.C. § 2283, known as the relitigation exception, applies here because the *Marshall* judgment is *res judicata* as to certain claims raised in the state court action. On October 11, 1984, this Court held that it should exercise its jurisdiction under 28 U.S.C. § 2283 and not abstain under the doctrine created by *Younger*. At that time, the Court ordered the parties to brief the issue of the *Marshall* judgment's *res judicata* effect, if any, on the state action. This is the issue that the Court reaches today.

## II.

Preliminarily, the Court notes that an adequate appreciation of the issues raised is impossible without a brief review of the FLSA, 29 U.S.C. § 201 *et seq.*, and the AWHA, Alaska Stat. 23.10.060 *et seq.* Both the federal and state statutes require that employees, unless otherwise exempted by virtue of their occupational classification, receive overtime compensation (at "one and one-half times the regular rate") for hours worked in excess of forty hours per week. *Compare* 29 U.S.C. § 207(a)(1) with Alaska Stat. § 23.10.060.

Despite this similarity in the primary substantive aspect of the two statutes, the two acts are quite distinctive, as noted by the Alaska Supreme Court. *See Webster v. Bechtel Inc., supra*, 621 P.2d 894–96. The first major difference arises from the fact that whereas the FLSA requires overtime payment only for hours worked in excess of forty per week, the AWHA additionally provides for such payments where an employee has worked fewer than forty hours per week, and yet more than eight hours per day.[3] Second, under Alaska procedure the AWHA would be enforced by opt-out class actions, while the FLSA allows only opt-in class actions.[4] Finally, whereas the AWHA contains no "good-faith" exception to the mandatory award of liquidated damages, the FLSA provides that such an

---

**3.** 29 U.S.C. § 207(a)(1) provides in relevant part: "[N]o employer shall employ any of his employees * * * for a work-week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Alaska Stat. § 23.10.060 provides in relevant part:

No employer * * * in Alaska may employ an employee not acting in a supervisory capacity * * * for a workweek longer than 40 hours or for more than eight hours a day, except that if the employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid * * *.

**4.** *See Webster v. Bechtel Inc.*, 621 P.2d 890, 895–96 (Alaska 1980).

award is discretionary if the employer acted in good faith.[5]

This last distinction is, to a large degree, the effective cause of the present litigation. Relying, at least in part, on the AWHA's provision for mandatory liquidated damages, the former Bechtel employees pursued their claims in state court. In contrast, the Secretary was required by law to pursue his FLSA action in federal court. Within this forum, the Secretary was authorized to proceed under either § 216(c) or § 217. Section 216(c) allows for recovery of liquidated damages, subject to a defense of good faith. While allowing for recovery of prejudgment interest, § 217 does not provide for recovery of liquidated damages.

In denying Bechtel's motion for partial summary judgment based on the res judicata effects of *Marshall,* the state trial court in *Webster* held that the state and federal requirements for the payment of overtime for hours worked beyond forty per week were not identical because the mandatory liquidated damages that are sought in *Webster,* were not recoverable in the federal action. In the present action, Bechtel argues that this holding is flawed for primarily two reasons: first, the Secretary could have recovered liquidated damages if he had proceeded under § 216(c), and, second, the state court's concern for the difference between mandatory liquidated damages available under the federal statute and liquidated damages subject to a good-faith defense available under the state statute amounts to "hairsplitting." Bechtel's motion for summary judgment at 40. Thus, Bechtel argues that the employees pursue an essentially identical claim to that already pursued and settled by the Secretary. The former employees argue that the two claims are distinguishable, and the Secretary cannot be considered their privy.

### III.

#### A.

Three criteria must be met for the doctrine of res judicata to apply: (1)

there must be a final judgment on the merits in another suit, rendered prior to judgment in the subject action by a court of competent jurisdiction; (2) there must be an identity of parties or their privies in both suits; (3) there must be an identity of the claim or right asserted in both suits. *See Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979); *Nash County Board of Education v. Biltmore Co.,* 640 F.2d 484, 486 (4th Cir.), *cert. denied,* 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188, *reh'g denied,* 454 U.S. 1117, 102 S.Ct. 692, 70 L.Ed.2d 654 (1981). There can be no doubt that the first of these requirements has been met. The jurisdiction of the federal court to enter judgment in actions brought by the Secretary is expressly granted in 29 U.S.C. § 217: "[T]he district courts * * * shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title * * *." Furthermore, the consent decree is as final, conclusive, and binding for purposes of res judicata as one rendered after adversarial proceedings. *See Safe Flight Instrument Corp. v. United Control,* 576 F.2d 1340, 1344 (9th Cir.1978); 1B J. Moore, *Moore's Federal Practice* ¶ 0.409[5] (2d ed. 1983).

#### B.

As a general rule, one "who is not a party to an action is not bound by or entitled to the benefits of the rules of res judicata * * *." Restatement (Second) of Judgments § 78(3). The exception to the rule arises in the situation where a party in the second action is found to have been represented by his or her privy in the first action; the doctrine of res judicata binds only parties or their privies by a prior judgment.

In this case, there is no contention about an identity of parties in the *Marshall* and *Webster* actions; the former employees were not parties to the *Marshall* action. Rather, Bechtel contends that the Secre-

**5.** *See Alaska International Industries, Inc. v. Mu-*   *sarra,* 602 P.2d 1240, 1249 (Alaska 1979).

tary was a privy of the *Webster* plaintiffs, and that settlement of the Secretary's FLSA suit precludes the present action. While the concept of privity is crucial to *res judicata* analysis, its meaning is extremely problematic. As the court noted in *Nash:*

> Privity is a term without any "generally prevailing definition * * * which can be automatically applied to all cases involving the doctrine of *res judicata,*" *Heaton v. Southern Ry. Co.,* 119 F.Supp. 658, 660 (W.D.S.C.1954). It has been appropriately described as "an elusive concept, without any precise definition of general applicability * * * [which in essence] designates [for *res judicata* purposes] a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved," *Jefferson School of Social Science v. Subversive Act. Com. Bd.,* 331 F.2d 76, 83 (D.C.Cir.1963). Or, as the Court similarly declared in *Aerojet General Corp. v. Askew* [*sic*], 511 F.2d ·710, 719 (5th Cir.1975) *cert. denied* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137, the term is sufficiently inclusive "under the federal law of *res judicata* [that] a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. * * * "

640 F.2d at 493–94. The alignment of interests between the privy and the party that he or she seeks to represent need not be exact. *See Nevada v. United States,* 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983). The Court is thus called upon to make the difficult determination of whether the alignment is sufficiently close that the application of the concept of privity is appropriate.

Bechtel makes essentially two arguments in support of its assertion that the Secretary must be deemed the privy of the *Webster* plaintiffs. First, Bechtel relies on a common law understanding of privity as expressed in *Nash* and *Nevada.* Second, it argues that the Secretary's statutory authorization under the FLSA to commence and litigate suits for back wages, to the exclusion of the employee's right, establishes the requisite privity in this case. Bechtel's motion for summary judgment at 20. This contention is in accord with the Restatement (Second) of Judgments § 85(1)(d) (Tent. Draft No. 2, Apr. 15, 1975), which states: "A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of *res judicata* as though he were a party. A person is represented by a party who is * * * an official or agency * * * vested by law with authority to represent the person's interest * * *." The Restatement further provides that a "representative's authority is defined in terms of the interest that he is empowered to protect." Restatement (Second) of Judgments, § 86, Comment c (Tent. Draft No. 2, Apr. 15, 1975).

The Court will examine Bechtel's common law argument before turning to the question of FLSA authorization. In *Nash,* the Fourth Circuit held that plaintiff-appellant Nash County Board of Education was precluded from maintaining a federal antitrust action by reason of a consent judgment entered in an earlier state antitrust action filed by the state attorney general against the same defendants. Both actions challenged alleged price-fixing by dairy companies that sold milk products to the state public school system. In reaching its decision, the court held that the attorney general's authority to act as a privy on behalf of the school board was clear under both common law and statutory law.

The court noted that at common law, an attorney general has complete authority to act on behalf of state political subdivisions in the absence of constitutional or statutory restrictions, and that no affirmative authorization by the school board was required. The court went on to note that no such restrictions existed, and that the thrust of North Carolina statutory law was to the contrary because it apparently authorized such suits. N.C.Gen.Stat. § 114–2(2), which authorized the attorney general to "represent all State departments, agen-

cies \* \* \* or other organized activities \* \* of the State which receive support in whole or in part from the State," was considered particularly important by the court. Clearly, the court's concern with the common law understanding of an attorney general's duties is of only indirect significance to this Court, and the authorization provided by the North Carolina statute is of absolutely no relevance.

Bechtel further relies on *Nevada*, in which the Supreme Court held that a suit brought by the United States in 1913 to adjudicate water rights to the Truckee River for the benefit of the Pyramid Lake Indian Reservation and the planned Newlands Reclamation Project would bar a 1973 suit seeking broader water rights; the tribe intervened in the latter suit that was brought by the United States.

In reaching its decision that the United States served as the Indians' privy in the 1913 action, the Court looked at both common law and statutory authorization for the Secretary's status as a privy. It noted that the United States "undoubtedly owes a strong fiduciary duty to its Indian wards." *Nevada, supra*, 463 U.S. at 142, 103 S.Ct. at 2924. Indeed the Court went so far as to rely on the anachronistically paternalistic language of *Heckman v. United States*: "There can be no more complete representation than that on the part of the United States in acting on behalf of these dependents—whom Congress, with respect to the restricted lands, has not yet released from tutelage \* \* \*. It is a representation which traces its source to the plenary control of Congress in legislating for the protection of the Indians under its care \* \* \*. *Nevada, supra*, 463 U.S. at 142, 103 S.Ct. at 2924, *citing Heckman v. United States*, 224 U.S. 413, 444–45, 32 S.Ct. 424, 434, 56 L.Ed. 820 (1912). The Court held that the Indian Reorganization Act of 1934's requirement that the Secretary represent both the tribe and reclamation projects in areas adjacent to Indian lands did not amount to a lack of privity. *See* 25 U.S.C. § 461.

Clearly *Nevada* turns on a unique "fiduciary" relationship existing between the United States government and Native Americans. No such relationship exists here. More broadly, both *Nevada* and *Nash* base their findings of privity upon statutory authorization. Thus, in order to determine whether privity exists in the present case, the Court must examine the Secretary's authority to represent the employees' interests under the FLSA.

■ 29 U.S.C. 216(c) provides that an employee's right to bring a private action under § 216(b) "shall terminate upon the filing of a complaint by the Secretary in an action under this subsection in which a recovery is sought of unpaid minimum wages or unpaid overtime compensation \* \* \* or liquidated or other damages \* \*." Section 216(b) provides the employee's right to bring a suit on his or her own behalf under that subsection "shall terminate upon the filing of a complaint by the Secretary of Labor in an action under § 217 \* \* \*." Bechtel argues that these provisions grant the Secretary explicit statutory authority to sue on behalf of employees for back wages and liquidated damages.

In truth, however, these sections expressly grant the Secretary authority to cut off all FLSA claims that have not been filed at the time of the Secretary's action. These sections do not expressly allow the Secretary to terminate prior filed federal actions, or state actions. Such a conclusion can only follow from a determination that the Secretary maintains an implicit authority under the scheme established by the FLSA. The Court refrains from drawing such an inference in this case.

The remedial schemes of the FLSA and the AWHA suggest that remedial provisions of the two statutes were meant to be applied cumulatively. 29 U.S.C. § 218 provides that "No provision of this chapter or of any order shall excuse noncompliance with any \* \* \* Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter." The Alaska Supreme

Court held by way of preemption analysis that the FLSA "does not mention nor purport to extinguish any private rights under state law. The 'policies' expressed in these provisions apply by their terms only to federal law, and we discern no explicit congressional intent that they should apply to state law actions." *Webster v. Bechtel Inc., supra,* 621 P.2d at 902. Similarly, this Court can find no reason to infer statutory authority to terminate prior filed state actions pursuant to *res judicata* analysis.

■ Rather, this Court holds that while the Secretary's interests do in fact overlap to a significant degree with the interests of the employees, the overlap is not so great that the requisite closeness of interests can be established. The Secretary sues in the general public interest in a FLSA § 217 action, and not, strictly speaking, on behalf of the employees: the purpose of an "injunction to restrain the withholding of wages due is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest." *Wirtz v. Jones,* 340 F.2d 901, 904 (5th Cir.1965). Although it is true that as a result of the Secretary's actions "money may pass from the employer into the pocket of the employee * * * that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim it, is simply a part of a reasonable and effective means which Congress * * * found it necessary to adopt to bring about general compliance with § 15(a)(2)." *Id.*

The relationship between the Secretary and the employees in a FLSA § 217 action is closely analogous to that between the Equal Employment Opportunity Commission ("EEOC") and employees in a Title VII action. In *General Telephone Co. of the Northwest v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), the Su-

preme Court clearly indicated that questions of privity may turn on remedial purposes of statutes. Holding that the EEOC was authorized by Title VII to bring § 706 actions for injunctive and legal relief on behalf of individuals adversely affected by racial discrimination without complying with Rule 23 of the Federal Rules of Civil Procedure, the Court engaged in a helpful discussion of the *res judicata* implications of government agency suits:

The 1972 amendments [to Title VII] retained the private right of action as an "essential means of obtaining judicial enforcement of Title VII, *Alexander v. Gardner-Denver Co., supra,* 415 U.S. [36] at 45 [94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974) ], while also giving the EEOC broad enforcement powers. In light of the "general intent to accord parallel or overlapping remedies against discrimination," 415 U.S. at 47, 94 S.Ct. at 1019, we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all "class" members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible difference between the public and private interests involved.

*General Telephone, supra,* 446 U.S. at 332–33, 100 S.Ct. at 1707.

The clear intent of the FLSA is to promote broad remedial schemes. Moreover, the statute is explicit in its efforts to allow states to provide broader remedies than those that are provided by federal law. This statutory intent is analogous to the statutory intent that underlies EEOC enforcement actions, and analogically, the Secretary's abilities to act as a privy must be narrowly construed.[6]

One final factor counsels against a finding that the Secretary served as a privy.

6. The analogy between Title VII and the FLSA is imperfect. In *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that an arbitration proceeding will not bar a later federal action under Title VII. In *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d

262 (1981), however, the Court held that a state court affirmance of an agency determination will bar the Title VII claim. Both cases turn on Congressional intent as indicated by statutory remedial schemes, and this is the relevant principle for present purposes.

The *Marshall* judgment was not intended by the parties to settle any of the *Webster* employees' claims under the AWHA; the Secretary's complaint sought to enjoin only violations of the FLSA. Indeed, as the Secretary admits, he is without authority to sue under the state statute. Secretary's amicus brief at 16. The settlement stated that it included "all claims or causes of action comprehended by the complaint [filed by the Secretary of Labor]." Moreover, the settlement release signed by the employees stated: "I hereby acknowledge that my acceptance of this check is in full satisfaction of all Fair Labor Standards Act claims which I may have * * *." The clear intention of the settlement was to release Bechtel from all FLSA claims, not from all claims that were being pursued by the employees.

### C.

The third issue to be addressed when determining whether *res judicata* applies is whether the later filed suit arises from the same "cause of action" as the earlier suit. This concept is no less flexible than the concept of privity, and identity of claims "cannot be determined precisely by mechanistic application of a simple test." *Abramson v. University of Hawaii*, 594 F.2d 202, 206 (9th Cir.1979), cited in *Derish v. San Mateo-Burlingame Board of Realtors*, 724 F.2d 1347, 1349 (9th Cir.1983). However, while no precise test is available, the courts have identified certain factors that may helpfully be examined. In *Constantini v. Trans World Airlines*, 681 F.2d 1199 (9th Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), the court set forth the following factors:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 1201–02, citing *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980). An identical "transactional nucleus of facts" is the most important factor. 621 F.2d at 343; *Derish, supra,* 724 F.2d at 1349.

The difficult analysis demanded by this amorphous concept is rendered even more difficult when the issue of exclusive federal jurisdiction is concerned, as in the present case; where state and federal courts lack concurrent jurisdiction, the two competing policies of exclusive federal jurisdiction and *res judicata* clash. *See id.* In this situation, the usual rule prohibiting splitting a cause of action is relaxed. Although this Court's holding that the Secretary cannot be regarded as a privy of the *Webster* plaintiffs, it further holds that the usual prohibition against splitting a cause of action is inappropriate in the present instance.

Restatement Second of Judgments § 61.-2(c) (Tentative Draft No. 5, 1978) states that the general rule does not apply when:

[T]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions of their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief * * *.

The issue framed by the Restatement has typically arisen in the form of antitrust suits involving divergent state and federal remedial schemes. Typically, a plaintiff or his privy will first sue in a state court under the state antitrust statute. The plaintiff will then sue under the federal statute in a federal court that asserts exclusive federal jurisdiction. In *Nash, supra,* as already noted, the court held that an action brought under federal antitrust law was barred by a consent judgment entered into by the state attorney general in an earlier state action. *See also Engelhardt v. Bell & Howell Co.*, 327 F.2d 30

(8th Cir.1964); *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286 (5th Cir.1971) *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972).

On the other hand, several courts have refused to bar the second action in such cases. In *Hayes v. Solomon,* 597 F.2d 958 (5th Cir.), *reh'g denied,* 602 F.2d 1246 (5th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980), the court held that a federal antitrust suit was not barred by a prior state action. The Court stated:

> The principle of *res judicata* which prohibits splitting a cause of action "applies only to claims 'then capable of recovery' in the first action." *United States v. Pan-American Petroleum Co.,* 55 F.2d 753, 782 (9th Cir.), *cert. denied,* 287 U.S. 612, 53 S.Ct. 14, 77 L.Ed. 532 (1932). In this case, the first forum, the Texas state court, could not provide the relief sought in the second forum, federal antitrust damages. We hold, therefore, that this case was not barred by the splitting prohibition.[7]

*Id.* at 984. *See also Cream Top Creamery v. Dean Milk Co.,* 383 F.2d 358, 363 (6th Cir.1967); *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (2d Cir.), *reh'g denied,* 222 F.2d 195, *cert. denied,* 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955).

In *Nash,* relied on heavily by plaintiff, 640 F.2d 484, 492 (4th Cir.1981), the court noted that denial of *res judicata* effect in *Hayes, Cream Top Creamery,* and *Lyons* turned on the fact that "the remedy in the state court was found to be different from that available in the federal court because only in the federal court could a recovery of treble damages be had." The court proceeded to distinguish those cases, noting that the North Carolina and federal statutes provided identical rights of recovery.

In *Derish,* the Ninth Circuit similarly grappled with a divergence of remedies available in state and federal courts. Holding that vendors who sued a real estate broker under a state antitrust statute were barred in a subsequent Sherman Act action, the Court distinguished *Hayes, Cream Top Creamery,* and *Lyons* in exactly the same manner employed by the court in *Nash. Derish, supra,* 724 F.2d at 1351. Additionally, the Court noted that an earlier Ninth Circuit opinion *Mach-Tronics, Inc. v. Zirpoli,* 316 F.2d 820 (9th Cir.1963), had evoked the court's concern about the availability of treble damages and a jury trial under the California anti-trust statute. *Id.* No similar concerns were implicated in *Derish,* 724 F.2d at 1351: "The treble damage and jury trial concerns do not apply to our case. The Derishes sued first in state court under provisions of the Cartwright Act that clearly permit treble damages and jury trials." (Citations omitted.)

These concerns, however, about the unavailability of broader remedies are implicated in the present action. Bechtel argues that it is irrelevant that equivalent remedies were not available in the federal § 217 action; that the issue is whether they were available in the federal forum. Framing the issue in this manner, however, does not allow Bechtel to prevail. Although the Secretary could have sought liquidated damages in the federal forum under FLSA § 216(c), he could not have sued for *mandatory* liquidated damages. Plaintiff characterizes this difference as "mere hairsplitting." Bechtel's motion for summary judgment at 40. However, the existence of a good faith defense renders the federal remedy far more narrow than the state remedy. Thus, because the Secretary could neither sue in federal court under the AWHA or sue for the breadth of relief available under the state statute, the present case falls squarely within the exception to the general rule prohibiting the splitting of a cause of action, as stated in Restatement (Second) of Judgments § 61.2(c) and related cases.

---

7. As this quotation demonstrates, the Court in *Hayes* ambiguously stated its holding. It is unclear whether the court believed that *res judica-* *ta* applies to claims capable of recovery in the first forum or in the first action.

Furthermore, this action falls within the exception expressed in Restatement Second of Judgments § 61.2(d). That section provides that the general rule prohibiting splitting a cause of action does not apply when:

> [T]he judgment in the first action was plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme, or it is the sense of the scheme that the plaintiff should be permitted to split his claim * * *.

The analysis underlying the determination that the statutory schemes of the FLSA and AWHA allow splitting a cause of action is identical with the earlier analysis of the statutory schemes contained in the privity section of this Opinion. For the sake of relative brevity, the Court will not repeat this analysis.

### IV.

 In *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) the Supreme Court stated that an effort "to preclude parties from contesting matters that they have had a full and fair opportunity to litigate" lies at the heart of *res judicata*. This effort would be perverted by application of *res judicata* in the present context. The *Webster* employees brought a suit in state court seeking broad state remedies under the AWHA. The Secretary, as a representative for the public interest, then filed suit in federal court under the FLSA, seeking narrower remedies than those available to the workers in state court. As required by statute, the federal suit was fought and settled without any consultation with the former Bechtel employees; the ensuing judgment purported to preclude only further claims under the FLSA. In this situation, the Secretary did not serve as the privy of the employees, because he lacked authority at both common and statutory law to do so. Moreover, the statutory scheme created by the AWHA and FLSA precludes the Court from applying the general prohibition against splitting a cause of action. Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is DENIED, and the action is dismissed. Plaintiff shall submit a judgment to the Court, approved as to form by defendant, on or before July 29, 1985.