No. 89-082

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF WAGE CLAIMS OF
RANDALL P. STEWART, ALLEN W. COPELAND,
LIONEL F. McKNIRE, GREG W. BRANTNER, ARTHUR
BRISCOE,

      Petitioners and Respondents,

  -vs-

REGION II CHILD AND FAMILY SERVICES,

      Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,
           In and for the County Lewis & Clark,
           The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:
    For Appellant:
        Richard Larson; Waite, Schuster & Larson, Great Falls,
        Montana

    For Respondent:
        Timothy J. McKittrick; McKittrick Law Firm, Great Falls,
        Montana

    For Amicus Curiae:
        Melanie A. Symons, Dept. of Labor & Industry, Helena,
        Montana
        Janice Van Riper; Meloy Law Firm, Montana Residential
        Child Care Assoc., Helena, Montana
        Nick Rotering, Dept. of Institutions, Helena, Montana
        Cary B. Lund, Dept. of S.R.S., Helena, Montana
        Patrick M. Driscoll; Chronister, Driscoll & Moreen,
        Mt. Council of Mental Health Centers, Helena, Montana
        Joe R. Roberts, Mt. Assoc. of Independent Disabilities
        Services, Helena, Montana

Submitted: December 12, 1989
  Decided: March 15, 1990

Filed:

_____
             Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Region II, Child and Family Services, Inc., appeals the First Judicial District Court, Lewis and Clark County, review of administrative hearings held by the Montana Department of Labor and Industry. The District Court reversed the agency's determination that live-in employees were not entitled to compensation for time spent sleeping during supervision of residential care facilities and ordered the appellant to pay back wages, liquidated damages, costs, and attorney fees against the employer. We reverse.

## ISSUES

Appellant Region II, Child and Family Services, Inc., raises the following issues.

(1) Did the District Court err in substituting its own findings of fact for those of the Montana Department of Labor and Industry?

(2) Did the District Court err in holding that the respondents' wage claims were subject to the Montana Minimum Wage and Maximum Hour Act as well as the federal Fair Labor Standards Act?

(3) Did the District Court err in holding that the claimants' sleep time was compensable?

(4) Did the District Court err in rejecting interpretative opinions of the Administrator of the Wage and Hour Division of the United States Department of Labor?

(5) Did the District Court err in holding that Region II was not entitled to use the good faith defense of the federal Portal to Portal Act?

(6) Did the District Court err in holding that the claimants were entitled to damages, penalties, costs and attorney fees?

The claimants cross-appeal the issue of whether the District Court erred in failing to award attorney fees based on the claimants' contingency agreement or in the alternative to apply a multiplier to the award.

FACTS

Region II, Child and Family Services, Inc., is a private, nonprofit corporation which, under contract with the State of Montana, provides residential care facilities for the developmentally disabled and multiple handicapped.

The wage claimants worked at Region II's group homes between 1983 and 1985 as either full-time or weekend trainers and supervisors. Weekend trainers reported to the group home Friday afternoon and remained until Sunday evening. Full-time trainers covered from Sunday night through Friday morning. The full-time employees were on duty, and required to actively supervise clients, from about 7:00 a.m. until 10:00 a.m., when the clients left to attend training programs at the Great Falls Easter Seals Center. Typically, full-time trainers were off duty and free to leave the facilities until the clients returned from school. This four- to nine-hour period was the only time they were free to leave the

3

group home. As the Center provided no training on Saturday or Sunday, weekend employees were required to be on duty throughout each day.

Region II required both types of employees to remain at the group homes overnight and provided sleeping facilities. The overnight period lasted from about 10:00 p.m. to 7:00 a.m. Employees who received five consecutive hours of uninterrupted sleep during this period were compensated only for the time they spent attending clients. If employees did not receive five consecutive hours of uninterrupted sleep, Region II paid for the entire overnight period. Region II established this overnight policy in compliance with two interpretative opinions, known as the White and Cohen letters, issued by the Wage and Hour Division of the United States Department of Labor. The claimants understood the overnight policy when they went to work for Region II.

The claimants filed individual wage claims with the Montana Department of Labor and Industry [hereinafter the Department] for the uncompensated sleep time Region II required them to be present at the group homes. The Department consolidated the claims and held an administrative hearing. The hearing examiner rejected the claims after applying the federal Fair Labor Standards Act [hereinafter F.L.S.A.] (codified at 29 U.S.C. §§ 201 through 219) and interpretative opinions of the Administrator of the Wage and Hour Division of the United States Department of Labor.

The claimants appealed to the First Judicial District Court for judicial review of the Department's decision, claiming error in the Department's use of the F.L.S.A. as opposed to the Montana Minimum Wage and Maximum Hour Act [hereinafter M.W.M.H.A.] (codified at §§ 39-3-401 through -410, MCA). The District Court reversed the Department's decision. It agreed with the Department that the F.L.S.A. applied to the claims, but rejected the White and Cohen opinion letters as contrary to legislative intent and held that the F.L.S.A. regulations required that overtime be paid in the claimants' situation. The District Court remanded the claims to the Department directing it to determine damages.

Region II petitioned the court for another review arguing that the good faith defense of the federal Portal to Portal Act [hereinafter P.P.A.] (codified at 29 U.S.C. §§ 216, 251 through 262) barred the wage claims under federal law. The District Court denied second review reasoning that even if the P.P.A. barred the claims under federal law, the M.W.M.H.A. would apply and produce the same result.

In compliance with the District Court's order, the Department ordered Region II to pay the claimants a total of $99,393.50 in back wages and an equal amount in penalties as required by § 39-3-206, MCA. The Department found that it had no authority to grant the claimants' request for attorney fees. The District Court also reviewed this agency ruling at Region II's request and approved the Department's decision. The District Court further ordered Region

but did not then look to the regulations propagated under the Act. Instead, it went directly to the interpretative opinions of the Administrator of the United States Department of Labor found in the White and Cohen letters. The District Court initially agreed that the F.L.S.A. controlled the claims, but analyzed the case under the F.L.S.A. regulations.

While the findings of fact necessary to apply the interpretative opinions and those necessary to apply the regulations are substantially the same, the District Court came upon at least one discrepancy. The court refused to apply one regulation, 29 C.F.R. 785.22, because the Department did not make the requisite finding that the claimants usually enjoyed an uninterrupted night's sleep. The Department apparently never considered the issue since the interpretative opinions relied upon by the Department required no such finding. The District Court, however, proceeded as though the examiner had found that the claimants usually did not enjoy an uninterrupted night's sleep. The court thereby interjected its own findings of fact into the proceedings.

The reviewing court has the duty to determine whether the agency applied the appropriate law and whether its findings of fact are sufficient to justify the agency's rulings. When the court determines that the agency's findings are insufficient or that the agency applied the wrong law, it may not use the opportunity to usurp the agency's role as the trier of fact. We hold that the

8

II to pay the claimants $13,000 in attorney fees to cover expenses incurred by the claimants while before the District Court.

Region II now appeals the District Court's reversal of the Department's determination of no liability, denial of retrial, review of the Department's determination of damages and penalties, and judgment on attorney fees.

We note that Judge Gordon R. Bennett issued all the substantive orders and opinions that are now the subject of this appeal. The judge of record, Jeffrey M. Sherlock, handled only the final procedural matters following Judge Bennett's retirement in December of 1988.

## FINDINGS OF FACT

A district court's review of an agency's findings of fact is strictly limited. The reviewing court may affirm the agency's findings. Section 2-4-704(2), MCA. It may clarify the agency's findings so long as it does not substitute its judgment for that of the agency. Montana State Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 39, 676 P.2d 194, 198. The court may overrule an agency's findings of fact if they are clearly erroneous. They are not clearly erroneous if the record contains substantial credible evidence supporting the findings. City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430-31, 651 P.2d 627, 632. In no case may the district court substitute its own findings of fact for those of the agency. Section 2-4-704(2), MCA. The rules of agency review rely on the principle that

the agency, and not the district court, is the finder of fact. If a factual question is essential to an agency's decision, and the agency's findings of fact are so insufficient that they cannot be clarified or are entirely absent, the district court should remand the case to the agency for appropriate findings.

In the present case, the District Court violated this principle by relying on its own findings of fact in at least two instances. The first instance centers on the Department's Finding of Fact No. 11 which states:

> Allen Copeland <u>was viewed by the respondent</u> as working periods in excess of 24 hour duty. The other claimants <u>were viewed by the respondent</u> as residing on the premises for an extended period of time. (Emphasis added.)

The District Court correctly noted that this finding is little more than a recitation of the testimony. However, instead of clarifying the finding or remanding it to the Department, the court rejected the finding and proceeded as though the Department had come to the opposite conclusion. The court utilized 29 C.F.R. 785.21, a regulation which applied only if the claimants were not on duty in excess of twenty-four hours and did not live on the employer's property for an extended period. The court thereby substituted its own findings of fact for those of the Department in violation of section 2-4-704(2), MCA.

The second instance resulted from a disagreement between the Department and the District Court as to what law controlled. The Department determined that the F.L.S.A. governed the wage claims,

7

District Court committed reversible error by failing to remand this case to the Department for suitable findings of fact.

## DOES THE M.W.M.H.A. APPLY?

The determinative issue in this case is whether employees, such as the present claimants, who are subject to the federal Fair Labor Standards Act may also rely on the Montana Minimum Wage and Maximum Hour Act. The problem arises from the interaction of the federal Fair Labor Standards Act, the Montana Minimum Wage and Maximum Hour Act, and the federal Portal to Portal Act.

In 1938, Congress passed the Fair Labor Standards Act to prevent the use of unfair trade practices in interstate commerce leading to "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . ." 29 U.S.C. § 202(a). To ensure a minimum living standard, the F.L.S.A. establishes a minimum hourly wage, 29 U.S.C. § 206, and a maximum workweek without overtime compensation, 29 U.S.C. § 207. Part of the Act's enforcement mechanism allows employees to recover all unpaid wages plus an equal amount in liquidated damages for any violation of its wage and hour provisions. 29 U.S.C. § 216(b). Although nation-wide in scope, the F.L.S.A. does not cover all employees. See 29 U.S.C. § 203(e); 29 U.S.C. § 213.

In 1971, the Montana Legislature enacted the Minimum Wage and Maximum Hour Act. Like the federal Act, the M.W.M.H.A. ensures

workers a minimum living standard by setting minimum hourly wages, § 39-3-404, MCA, and maximum allowable work hours per week, § 39-3-405, MCA. Also like the F.L.S.A., the M.W.M.H.A. allows employees to recover unpaid wages plus up to 100% in liquidated damages, § 39-3-407, MCA; § 39-3-206, MCA. In Plouffe v. Farm & Ranch Equipment Co. (1977), 174 Mont. 313, 570 P.2d 1106, this Court held that in passing the F.L.S.A., Congress declined to preempt the entire field of wage and hour regulation. Therefore, employees not covered by the F.L.S.A. gained analogous rights from the M.W.M.H.A. Plouffe, 174 Mont. at 319-20, 570 P.2d at 1109. The federal and Montana Acts differ, however, in one important aspect.

Nine years after passing the F.L.S.A., Congress determined that expansive judicial interpretation of the federal Act had placed "wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers . . . ." 29 U.S.C. § 251(a). To correct the situation, Congress passed the Portal to Portal Act giving employers a good faith defense to wage claims.

> In any action . . . no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act . . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written . . . interpretation of [the Administrator of the

10

> Wage and Hour Division of the Department of
> Labor]. Such a defense, if established, shall
> be a bar to the action or proceeding, not-
> withstanding that after such act or omission,
> such . . . interpretation . . . is modified or
> rescinded or is determined by judicial author-
> ity to be invalid or of no legal effect.

29 U.S.C. § 259. Similarly, if the employer satisfies the court that it believed in good faith that the act or omission complained of was not a violation of the F.L.S.A., the P.P.A. authorizes the court to reduce or eliminate liquidated damages. 29 U.S.C. § 260.

In the present case, the parties do not dispute that the claimants are subject to the F.L.S.A. Enterprises covered by the F.L.S.A. include:

> [A]n institution primarily engaged in the care
> of the sick, the aged, the mentally ill or
> defective who reside on the premises of such
> institution . . .

29 U.S.C. § 203(r)(i). There is also no doubt that the P.P.A.'s good faith defense protects Region II. Although it did not apply the Portal to Portal Act, the Department did find as a conclusion of law that Region II had relied on the written interpretations of the Administrator of the Wage and Hour Division of the Department of Labor found in the White and Cohen letters in formulating its overnight policies. This reliance satisfies the requirements of the good faith defense thereby barring the claims under the F.L.S.A. The issue now is whether the claimants can fall back on

11

the M.W.M.H.A. to recover wages and liquidated damages for their sleep time.

The District Court relied on one F.L.S.A. provision to find that they could. The federal Act defers to state laws which provide greater benefits.

> No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law . . . establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . . .

29 U.S.C. § 218(a). The District Court reasoned that since the claims are barred by the P.P.A. good faith defense, the claimants are entitled to no benefits under the federal law. Montana law has no provision comparable to the P.P.A. good faith defense and, therefore, provides the claimants with a higher minimum wage. According to F.L.S.A. section 218(a), therefore, the M.W.M.H.A. should apply to the wage claims.

The District Court, however, failed to consider the effect of a limiting provision in the Montana Act; the M.W.M.H.A. explicitly excludes employees covered by the federal Act.

> The provisions of [the M.W.M.H.A.] shall be in addition to other provisions now provided by law for the payment and collection of wages and salaries but shall not apply to employees covered by the Fair Labor Standards Act.

Section 39-3-408, MCA (1985). (Emphasis added.) The Montana law defers to the federal law while the federal law defers to the

Montana law. Like two overly-polite gentlemen standing before a single door, the State and federal provisions are caught in a classic "you first" impasse.

Both parties and five amici curiae have extensively briefed and argued this issue. Most of the authority offered, however, does not solve the current impasse and leaves this issue a question of first impression.

In Glick v. Department of Institutions (1973), 162 Mont. 82, 509 P.2d 1, cert. den. 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106, we relied on Montana law to determine the number of hours necessary to trigger overtime compensation, Glick, 162 Mont. at 89, 509 P.2d at 5, but applied the F.L.S.A. in determining liquidated damages, Glick, 162 Mont. at 90-91, 509 P.2d at 6. This case provides no guidance on the present issue because we did not apply the M.W.M.H.A. We relied instead on the Montana constitutional and statutory provisions guaranteeing an eight-hour work day. Glick, 162 Mont. at 86-87, 509 P.2d at 4.

In Plouffe v. Farm & Ranch Equipment Co., the F.L.S.A. exempted the employer from federal wage regulation. We held that by enacting F.L.S.A. § 218, Congress declined to preempt the entire field of wage and hour regulations and, therefore, the employee could still rely on the M.W.M.H.A. Plouffe, 174 Mont. at 319-20, 570 P.2d at 1109. Because the F.L.S.A. never applied to the

employee, we did not need to decide if the employee was covered by both the federal and the Montana Acts.

In State v. Holman Aviation Co. (1978), 176 Mont. 31, 575 P.2d 923, the issue was whether M.W.M.H.A. § 408 prevented the State as assignee from pursuing an F.L.S.A. employee's wage claim under the Montana Wage Payment Act. The parties asked this Court to consider the effect of M.W.M.H.A. § 408's limiting provision on F.L.S.A. claims, but we did not reach that issue. We held only that § 408 does not apply to acts other than the M.W.M.H.A., but noted in passing that the section

> by its plain meaning provides merely that the provisions of this act . . . shall be applicable to set minimum wages and maximum hours for certain Montana employees in occupations not covered by the F.L.S.A., and that the F.L.S.A. shall apply to those employees which the federal act specifies.

Holman Aviation, 176 Mont. at 34, 575 P.2d at 925. (Quotations omitted.)

Following Plouffe and Holman Aviation, the Montana Attorney General issued an opinion on whether state and local government employees are covered by both M.W.M.H.A. and F.L.S.A. 41 Op. Mont. Att'y Gen. No. 58 at 240 (1986). In concluding that they are not, the Attorney General relied on the plain meaning of M.W.M.H.A. § 408, the above quoted statement from Holman Aviation, and the 1973 Legislature's refusal to amend the limiting provision of M.W.M.H.A. § 408 to read "shall not apply to employees covered by the Fair

14

Labor Standards Act, <u>provided that act requires a higher standard</u>."
H.B. 279, 43rd Leg. (1973) (text available from the Archives of the
Mont. Historical Society; emphasis indicates proposed addition).
Interpretations of the law by the executive branch provide per-
suasive authority when acquiesced in by the legislature. Cornwall
v. Department of Justice (Mont. 1988), 752 P.2d 135, 139, 45
St.Rep. 429, 435. In this case, however, the legislature did not
acquiesce in the opinion, but, as is noted below, acted in 1987 to
reverse its effect.

Like Montana authority, cases from other jurisdictions provide
little authority for resolving the present impasse, though two
cases deserve mention.

In Cosme Nieves v. Deshler (1st Cir. 1986) 786 F.2d 445, cert.
den. 479 U.S. 824, 107 S.Ct. 96, 93 L.Ed.2d 47, the federal court
considered whether F.L.S.A. § 218(a) allowed civilian employees of
the federal government covered by the F.L.S.A. to bring wage claims
under the more beneficial provisions of Puerto Rican law. The
court held against the claimants because the commonwealth law
specifically excluded federal employees. <u>Cosme Nieves</u>, 786 F.2d
at 452 (citing P.R. Laws Ann. tit. 29 § 246e(a)(2)). While
superficially similar to the present case, <u>Cosme Nieves</u> is distin-
guishable; the claimants in that case were not barred from bringing
their claims under the F.L.S.A. <u>Cosme Nieves</u>, 786 F.2d at 453.

In Webster v. Bechtel, Inc. (Alaska 1980), 621 P.2d 890, the Alaska Supreme Court considered whether the F.L.S.A. preempted the Alaska Wage and Hour Act. In holding that it did not, the court found no conflict between the liquidated damages provisions of the state and federal acts because the Alaska act contained no good faith defense similar to that in the Portal to Portal Act. The court noted that the provisions are complimentary; the Alaska statute would provide greater benefits furthering the purposes of F.L.S.A § 216(b). Webster, 621 P.2d at 904. The same analysis would apply to the present case if not for the limiting provision of M.W.M.H.A. § 408. Webster is distinguishable from the present case in that the Alaska act does not exclude employees covered by F.L.S.A. as does M.W.M.H.A. § 408. See Alaska Stat. §§ 23.10.050 through .150.

Like case law, public policy considerations are insufficient to solve the issue. Policy considerations weigh heavily on both sides. The obvious intent of both the F.L.S.A. and the M.W.M.H.A. is to ensure the health, efficiency, and general welfare of employees through enhancement and protection of wages and reasonable work-hour requirements. 29 U.S.C. § 202; § 39-3-401, MCA. Allowing F.L.S.A. employees to fall back on the M.W.M.H.A. when the federal law bars their claims would increase the protection of the present claimants and similarly situated employees.

16

On the other hand, extending M.W.M.H.A. protection to F.L.S.A. employees would have serious adverse consequences. In passing the good faith defenses of the Portal to Portal Act, Congress recognized that without amendment, F.L.S.A. claims would "bring about [the] financial ruin of many employers . . . curtailing employment, and the earning power of employees . . . ." 29 U.S.C. § 251(a)(1). A number of amici curiae argued that these same results will occur in Montana if group home operators are forced to pay greater wages for overnight periods. The effect in this time of fiscal restraint is likely to be fewer employees and a curtailment in services to a deserving clientele.

Although much of the authority presented by the parties and the amici curiae does not resolve the question, the language of the Montana statute is determinative. The judicial function in construing statutes is to give effect to the intention of the legislature. Legislative intent is determined by first looking to the plain meaning of the statute. Thiel v. Taurus Drilling Ltd. (1985), 218 Mont. 201, 205, 710 P.2d 33, 35. Section 39-3-408, MCA (1985), clearly states that the M.W.M.H.A. "shall not apply to employees covered by the Fair Labor Standards Act." In passing F.L.S.A. § 218(a), Congress gave the states the option of providing more beneficial wage and hour protection than that available under the federal law. The Montana legislature explicitly declined to

17

exercise that option for employees already protected by the F.L.S.A.

To hold that the limiting provision of M.W.M.H.A. § 408 does not prohibit the application of the M.W.M.H.A. to F.L.S.A. employees would be to hold that it is superfluous. In interpreting a statute, we may not ignore what is found in it, § 1-2-101, MCA, but must endeavor to give effect to each provision of the statute, Darby Spar, Ltd. v. Department of Revenue (1985), 217 Mont. 376, 379, 705 P.2d 111, 113. If the legislature intended to allow F.L.S.A. employees to also take advantage of the M.W.M.H.A., the limiting provision of M.W.M.H.A. § 408 would not have been necessary; F.L.S.A. § 218(a) already serves that function. When it acts, the legislature is presumed to have full knowledge of existing laws, Thiel, 218 Mont. at 207, 710 P.2d at 36, and is presumed to have intended to change those laws, Cantwell v. Geiger (1987), 228 Mont. 330, 333-34, 742 P.2d 468, 470. Therefore, we must assume that the legislature was aware that F.L.S.A. § 218(a) would allow F.L.S.A. employees to fall back on the M.W.M.H.A. when it provided greater benefits. And we must assume that by enacting the limiting provision of M.W.M.H.A. § 408, the legislature acted to counter the effect of F.L.S.A. § 218(a).

The 1971 Legislature's intent to exclude F.L.S.A employees from M.W.M.H.A. coverage is further evidenced by the recent amendment to M.W.M.H.A. § 408. The 1987 Legislature amended the section

18

to provide that the minimum-wage provisions of the M.W.M.H.A. "shall apply to an employee covered by the Fair Labor Standards Act if state law provides a minimum wage that is higher than the minimum wage established under the federal law." Act approved April 9, 1987, ch. 446, § 2, 1987 Mont. Laws 1012. Again, presuming that the Legislature intended to change the law, the pre-1987 version of the Montana law under which the present wage claims arose must have excluded F.L.S.A. employees.

## CONCLUSION

In passing the Portal to Portal Act, Congress noted that if it failed to amend the F.L.S.A., "employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay . . . ." 29 U.S.C. § 251(a)(4). This seems particularly true in the present case; the claimants were aware of the overnight policy when they agreed to work for Region II. Imposing an unexpected penalty upon Region II seems particularly inappropriate when the group-home operator formulated its overnight policy to conform with the government's interpretation of the wage and hour laws.

We hold that § 39-3-408, MCA (1985), excludes the claimants from coverage under the Montana Minimum Wage and Maximum Hour Act. Any claim under the federal Fair Labor Standards Act is barred by 29 U.S.C. § 259 of the Portal to Portal Act because Region II

relied in good faith upon the interpretations of the Administrator of the Wage and Hour Division of the United States Department of Labor in formulating its overnight policies.  Because the claims are barred, we need not reach any other issue presented by either party. The claimants are not entitled to back wages, liquidated damages, costs, or attorney fees.

Reversed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

20

Justice John C. Sheehy, dissenting:

A resident worker should be paid though he is sleeping on the job, where demands of work may interrupt his sleep-time. It is because he is on call, that he may not sleep at all, and it is otherwise too onerous to keep time.

At base this is a simple case, which gets lost in all of the rhetoric of the majority opinion. These employees are on the job most of the 24 hour day. The employer deducted from their pay the hours in the "overnight," from 10:00 p.m. to 7:00 a.m. If the worker got at least five consecutive uninterrupted hours of sleep, he was compensated only for the time he was interrupted by the clients. If he did not enjoy five consecutive uninterrupted hours, he was compensated for the entire overnight. The majority opinion holds that even though the employee, sleeping or not, is at the command of his employer, and his sleep-time is given over entirely to his employer, it is not necessary for the employer to compensate the employee fully for that time. The majority opinion is akin to holding that a fireman need not be paid for the time he is at the fire station unless he is fighting fires.

To reach their indefensible result, the majority have several hurdles to clear. The first is that the district judge made no findings in this case. The majority leaped this hurdle nicely by asserting that the district judge did make findings. The record, however, belies their position.

21

The district judge in this case expressly relied on the findings of the hearing examiner. He relied not only on the findings of the examiner, but noted particularly findings that the examiner did not make. The district judge based his decision then upon the findings as the hearing examiner expressed them. When the district judge first issued his conclusion in a formal order, the employers moved for a new trial before the District Court. In its order denying new trial, the District Court expressly rejected the implication that he had departed from the findings of the hearing examiner. The District Court stated:

> Respondent's brief implies this court found the findings of the hearings examiner were either totally insufficient or clearly erroneous. Additionally, it argues that we made new findings of fact. While we did comment on the hearings examiner's failure to address certain pertinent issues, we did not hold that any of his findings were in error nor did we determine that the findings were wholly inadequate. We explicitly based our opinion on ". . . the facts properly found by the examiner . . ." Specifically, respondent claims we made a factual finding that petitioners were not on duty five to eight hours a day and that they were on overnight status for eight hours. To the contrary, these facts were found by the hearings examiner and made part of his findings of fact by reference. Finding of fact number 3 adopts a stipulation by the parties as to the duration and terms of the shifts worked by the petitioners. That stipulation clearly shows there was a period of time during the day where the petitioners were relieved of their duties and that they were generally on overnight status from 10 p.m. to 7 a.m.
>
> Respondent suggests additional findings of fact are necessary before a proper decision can be rendered in this case. We reiterate that <u>our original opinion was based upon the findings of fact actually made by the hearings examiner</u>. Furthermore, § 2-4-704, MCA, provides for remand for additional factual findings <u>only</u> if they are essential to the decision <u>and if they were not made although requested</u>. As we noted in the original decision, neither party raised exceptions to the hearings examiner's findings of fact or questioned their

22

sufficiency.   (Emphasis added.)

Memorandum and Order re motion for a new trial, pages 4, 5.

The majority opinion makes no reference to this clear statement of the District Court as to the facts it based its opinion on, nor does the majority opinion attempt to state the purported new findings made by the District Court outside those made by the hearing examiner.

In truth, the District Court followed carefully the rule that it is bound, as is this Court, by factual findings of the hearing examiner and stipulations by the parties.  Hutchin v. State (1984), 213 Mont. 15, 688 P.2d 1257.

In Wage Appeal of Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 676 P.2d 194, we upheld the District Court, stating that it had acted correctly when it merely translated the hearing examiner's findings of fact without substituting its judgment for that of the agency on the weight of the evidence on questions of fact.  That is precisely what the district judge did at bar.

These then are the facts on which the District Court acted, which were found by the hearing examiner or stipulated to by counsel and which bound not only the District Court but this Court:

> Petitioners worked as trainers or supervisors of developmentally disabled clients at groups homes between 1983 and 1985.  Their work schedules varied somewhat, but generally they were required to be present at the homes 24 hours a day except for a period (anywhere from 4 to 9½ hours) during which the clients were at a day school, and during which time the trainers were free to leave the homes and do what they chose.  They were "on duty" (i.e., required to be actively supervising the clients) from 6:30 or 7:00 in the morning before the

23

clients left for day school, and from the time when the clients returned until 10:00 p.m. Uniformly it seems, the trainer's workday was suspended from 10:00 p.m. to 7:00 a.m., even though he was sometimes scheduled to begin supervising at 6:30 a.m., and even though he was generally the only trainer in the home during this period. This period was called the "overnight." If during the "overnight" the trainer enjoyed at least five consecutive uninterrupted hours, he was compensated only for the time he was interrupted by the clients. If he did not enjoy at least five consecutive uninterrupted hours, he was compensated for the entire "overnight." The petitioners here, however, claim entitlement to full payment (usually at time-and-half overtime rates) for all of the "overnight" time, 10:00 p.m. to 7:00 a.m. regardless of interruptions, most of which was in excess of 8 hours per day, 40 hours per week, and 80 hours per 14-day period.

Opinion and Order on Petition for Judicial Review, District Court, page 2.

In this dissent, I rely on those facts and none other in determining what the legal results should be.

The next hurdle over which the majority stumble is the effect and applicability of the Federal Fair Labor Standards Act to the facts of this case. The majority either missed the application by the District Court of the Federal Acts, or they fail in their own interpretation.

The Fair Labor Standards Act, 29 U.S.C. § 207 is clear. It provides:

(a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

. . .

(j) No employer engaged in the operation of a hospital or . . . the care of the sick, the aged, or the mentally

24

ill or defective who reside on the premises shall be deemed to have violated subsection (a) of this section if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, a work period of fourteen consecutive days is accepted in lieu of the workweek of seven consecutive days for purposes of overtime computation and if, for his employment in excess of eight hours in any workday and in excess of eighty hours in such fourteen-day period, the employee receives compensation at a rate not less than one and one-half times the regular rate at which he is employed.

The Department of Labor has issued implementing regulations which provide (29 Code of Federal Regulations § 785):

§ 785.20   General

Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities.

§ 785.21   Less than 24-hour duty.

An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy. A telephone operator, for example, who is required to be on duty for specified hours is working even though she is permitted to sleep when not busy answering calls. It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is required to be on duty and the time is worktime. (Citing cases.)

With respect to the Federal Act itself, the District Court pointed out that the applicable portion was subsection (j) of 29 U.S.C. § 207(a). The District Court concluded, correctly, that that subsection simply allows agreement where overtime compensation would be computed on the basis of an 8-hour day in a 14-day period rather than an 8-hour day in a 7-day period. The District Court further stated that the subsection did not apply here because there was no agreement beforehand between the employer and the employees.

25

Instead, the only overtime evidence of agreement was in the "employment agreement," exhibit 38 which provided:

> Overnight Agreement: In addition to your 40 hours per week you will also be providing overnight supervision 5 nights a week. You will be paid for any documented hours you have to be awake attending client needs.

There is no other evidence of any agreement with respecting pay than the foregoing phrase. In making that finding, the court relied expressly on the record and it made no independent findings of its own.

Turning now to regulation § 785.21, which is quoted above, it is obvious that that regulation requires sleeptime be compensated by the employer, and since his time is given to the employer, he is working even though he is permitted to sleep.

Another regulation of possible application here is § 785.22 which states:

> § 785.22 Duty of 24 Hours or More.
>
> (a) General. When an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked. (Citing cases.)
>
> (b) Interruptions of Sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable nights sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period, the entire

time is working time. (Citing a case.)

In examining the application of § 785.22, the District Court determined that there was no finding of fact by the examiner as to an agreement to exclude the sleeping period nor a finding that the employee usually enjoyed an uninterrupted night's sleep. Moreover, the application of the regulation is conditioned upon a prior finding that the employee "usually enjoyed an uninterrupted night's sleep." Without that, the District Court found that § 785.22 did not apply. Finally, the regulation applies only if the employee is on duty more than twenty-four hours.

The District Court then turned its attention to the third regulation, 29 CFR § 785.23 which follows:

> § 785.23 Employees residing on employer's premises or working at home.
>
> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all the pertinent facts will be accepted. This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her own home. (Citing cases.)

The District Court was critical of the foregoing regulation, and properly so. Through the regulation, the United States Department of Labor is taking a position that "any reasonable agreement" between the employer and the employee which "takes into consideration all the pertinent facts" will overturn the basic

27

command of the Wages and Hours Act. The District Court said "This regulation, on its face, reduces the clear command of the statute to a plea to be reasonable." The hearing examiner failed to make any findings of any kind that would show that the agreement between the employer and the employees here was reasonable, or that the agreement took into consideration all the pertinent facts. The District Court was correct in determining that this regulation should be cautiously applied, and only after a well-reasoned analysis by the hearing examiner that it did apply. Nothing of that sort appears in this case.

Of the three regulations which might apply, therefore, the one which directly applies, and which the District Court utilized, was 29 CFR § 785.21. The majority criticizes the District Court for utilizing this regulation although on the undisputed facts of this case it is the only regulation which is applicable. In so deciding, the District Court was making a conclusion of law; the majority state instead that he was making findings of fact; how and in what way the application by the District Court of § 785.21 is making a finding of fact is not explained in the majority opinion.

We come now to the administrative letters, the basis of the "good faith" defense. The first is a 1981 letter from Henry T. White, Jr., deputy administrator of the Wage and Hour Division of the United States Department of Labor, to representatives of privately-operated community residences for the mentally retarded. In that letter, White answered three posed questions. The questions relate (1) to employees who maintain separate

28

residences, (2) to a clarification of the five day, eight-hour rule contained in § 785.23, and (3) to the application of § 785.21 to relief employees who come in for two or three days. The letter candidly stated that with respect to relief employees, a departure from the general rule of § 785.21 would be tolerated by the Department "because of the home-like environment afforded to these employees in community residences, with private quarters and other amenities."

The second letter was written in 1985 by Herbert J. Cohen, a deputy administrator of the same federal agency. Again the letter concerns itself with relief employees in community residences for the mentally retarded. It again stated a "special rule" for employees of community residences where they are offered by their employer "a home-like environment."

As a Court, we should give absolutely no heed to the letters of these administrators. The conclusions in the letters fly in the face of the regulations of the Department, and the basic command of the statute relating to compensable time. If the Congress intended that a "home-like environment" could be substituted for wages in the form of money, the Congress did not say so. I agree with the District Court that administrative rulings and opinions may be used to explain and clarify regulations, and may not be used to nullify them. Teamsters v. Daniel (1979), 439 U.S. 551, 58 L.Ed.2d 808, 99 S.Ct. 790.

Based on the foregoing considerations, the District Court, in its order of January 14, 1988, held that under the Federal Act as

properly interpreted, the employees worked and were entitled to be compensated for "overnight" time. The employers moved the court for a new trial and brought to the attention of the District Court for the first time, the provisions of the federal "Portal to Portal Act" (PPA) and especially the provisions of 29 USC § 259(a) of the Act:

> In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended . . ., if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation . . . is modified or rescinded . . .

As the District Court stated, Montana does not have a state counterpart to the federal PPA. The federal law, however, does provide that if a state law would provide greater benefits to an employee respecting either minimum wages or maximum work weeks, state law applies. 29 USC § 218(a). Therefore, if under PPA, the employees were barred from any relief against their employer, the provisions of the Montana Act would apply:

> § 39-3-406(2). The provisions of 39-3-405 do not apply to:
>
> . . .
>
> (q) An employee of an hospital or other establishment primarily engaged in the care of the sick, disabled, aged or mentally ill or defective who is working under a work period not exceeding 80 hours in a 14-day period

30

established through either a collective bargaining agreement when a collective bargaining unit represents the employee or by mutual agreement of the employer and the employee where no bargaining unit is recognized. Employment in excess of 8 hours per day or 80 hours in a 14-day period must be compensated for at a rate of not less than 1½ times the hourly wage rate for the employee.

The foregoing statute creates an issue which is another hurdle which the majority opinion clears in the exercise of legerdemain. The majority point to § 39-3-408, MCA, which states that Montana's law shall not apply to employees who are covered by the Fair Labor Standards Act. The majority also take note of 29 USC § 218(a) under which the federal act defers to state laws which provide greater benefits. It is obvious that §§ 39-3-405 and 39-3-406(2), MCA, provide employees of the type involved here with greater benefits since their employment is in excess of 8 hours per day per 14-day period. The majority have concluded that Montana's superior benefits may not be recovered because of (1) the majority's dubious interpretation of nonaction by the legislature (deriving legislative intent from nonaction), and (2) by engaging in some spurious fact finding of their own, not based on the record, that group home operators forced to pay lawful wages will curtail their services and discharge employees.

There is, however, a clear legislative intent here to which the majority close their eyes. It is the intent of the Congress, that when state law provides greater benefits to a worker, the state law should apply. That beneficent purpose should override any other consideration and should motivate this Court, as it motivated the District Court, to cite Tennessee C, I, & R Company

31

v. Muscoda Local 123 (1944), 321 U.S. 590, 597, 88 L.Ed 949, 956, 64 S.Ct. 698, 703:

> We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profits of others. Those are the rights that Congress has specially legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

One of the great social advances of this century was the adoption by Congress of laws to protect employees so as to guarantee reasonable wages and hours in their working conditions. In the long run, it would be more advantageous to society that we refuse to allow any inroads that delimit this great social policy.

Moreover, under the interpretation by the majority of the effect of § 39-3-408, MCA, the intention of Congress that greater benefits under state law should apply would _never_ come into effect. The decision of the majority has the effect of repealing entirely § 39-3-408 and vitiating any application of 21 USC § 218(a) to a Montana case. In holding that the employees are covered by the Fair Labor Standards Act, even though the employees can make no recovery under the Act, the majority eliminate any possibility for an employee whose job is part of commerce to have any benefit from § 39-3-408. The duty of courts, especially an appellate court, is to give effect to statutes, not to nullify them by interpreting them out of existence. The majority remind one of the Walrus and the Carpenter, who ate the oysters they were supposed to protect.

I dissent and would affirm the decision of the District Court.

_John C. Sheehy_
Justice

I join in the foregoing dissent of Justice Sheehy.

_William E. Hunt_
. Justice

32

*Correction on p. 21*    JCS

No. 89-082

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

---

IN THE MATTER OF WAGE CLAIMS OF
RANDALL P. STEWART, ALLEN W. COPELAND,
LIONEL F. McKNIRE, GREG W. BRANTNER, ARTHUR
BRISCOE,

        Petitioners and Respondents,

    -vs-

REGION II CHILD AND FAMILY SERVICES,

        Respondent and Appellant.

---

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County Lewis & Clark,
             The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:
    For Appellant:
        Richard Larson; Waite, Schuster & Larson, Great Falls,
        Montana

    For Respondent:
        Timothy J. McKittrick; McKittrick Law Firm, Great Falls,
        Montana

    For Amicus Curiae:
        Melanie A. Symons, Dept. of Labor & Industry, Helena,
        Montana
        Janice Van Riper; Meloy Law Firm, Montana Residential
        Child Care Assoc., Helena, Montana
        Nick Rotering, Dept. of Institutions, Helena, Montana
        Cary B. Lund, Dept. of S.R.S., Helena, Montana
        Patrick M. Driscoll; Chronister, Driscoll & Moreen,
        Mt. Council of Mental Health Centers, Helena, Montana
        Joe R. Roberts, Mt. Assoc. of Independent Disabilities
        Services, Helena, Montana

---

           Submitted: December 12, 1989
             Decided: March 15, 1990

Filed:

_____
            Clerk

A resident worker should be paid though he is sleeping on the job, where demands of work may interrupt his sleep-time. It is because he is on call, that he may not sleep at all, and it is otherwise too onerous to keep time.

At base this is a simple case, which gets lost in all of the rhetoric of the majority opinion. These employees are on the job most of the 24 hour day. The employer deducted from their pay the hours in the "overnight," from 10:00 p.m. to 7:00 a.m. If the worker got at least five consecutive uninterrupted hours of sleep, he was compensated only for the time he was interrupted by the clients. If he did not enjoy five consecutive uninterrupted hours, he was compensated for the entire overnight. The majority opinion holds that even though the employee, sleeping or not, is at the command of his employer, and his sleep-time is given over entirely to his employer, it is not necessary for the employer to compensate the employee fully for that time. The majority opinion is akin to holding that a fireman need not be paid for the time he is at the fire station unless he is fighting fires.

To reach their indefensible result, the majority have several hurdles to clear. The first is that the district judge made no findings in this case. The majority leaped this hurdle nicely by asserting that the district judge did make findings. The record, however, belies their position.

21